## MAYS, ADM'R, &C., *vs.* WILLIAMS.

[ACTION ON NOTE GIVEN TO ADMINISTRATOR FOR MEDICAL SERVICES RENDERED BY HIS INTESTATE.]

1. *Construction of statutes prohibiting unlicensed physicians from practicing.*—The effect of the acts of 1823, 1826, and 1832, (Clay's Digest, pp. 487–8, §§ 2, 9, 10,) construed together, is to render void all bonds, notes, promises, &c., given or made to an unlicensed physician, in consideration of medical services rendered by him, unless his name has been enrolled in one of the medical boards of this State, or unless he practices on the botanic system only ; and when suit is brought on a note, which is shown to have been given in con-

sideration of medical services rendered, no recovery can be had, unless it is proved that the person by whom the services were rendered was not within the prohibition of the statute.

2. *Validity of contract determined by what law.*—The validity of a contract must be determined by the statute in force at the time it is made : if it is valid when made, a subsequent change or repeal of the law cannot impair its validity ; and if it is void when made, no subsequent law can impart to it validity.

3. *Rules of evidence governed by what law.*—In all civil actions commenced since the adoption of the Code, although founded on contracts whose validity must be determined by the old law, the rules of evidence prescribed by the Code must govern.

4. *Preponderance of evidence in civil cases.*—In the absence of legal presumptions, it is for the jury alone to determine what amount of evidence is required to produce conviction in their minds; and a charge, which instructs them " that, in civil cases, all that is required is that the proof shall preponderate in favor of one party or the other, and that they must find according to the preponderance of the proof," invades their province, and is therefore erroneous.

APPEAL from the Circuit Court of Chambers.

Tried before the Hon. JNO. GILL SHORTER.

THIS action was commenced in August, 1853, and was founded on a promissory note of which the following is a copy :

"$89,75. One day after date, I promise to pay Robert L. Mays, adm'r, &c., the sum of $89,75, for value received this March 13, 1851.       (signed)       Wilson Williams."

The plaintiff sued on this note as administrator of Thomas J. Williams, deceased. The bill of exceptions states, that after the plaintiff had read the note in evidence, " the defendant proved by a witness, that said note was given entirely for a medical account contracted by defendant with plaintiff's intestate in his lifetime, in the years 1850 and 1851, which account was found on said intestate's books after his death ; that when said note was given to plaintiff, the said medical account was given up to the defendant, and the note was handed by him to plaintiff; that at the time the said note was thus executed, and said account receipted and given up, defendant raised no other objection to the account than that it was too large, and, on being informed that plaintiff, as administrator of his intestate, could deduct no portion of said account, he then executed said note, and delivered it to plaintiff. Defendant further proved, that he had regularly served a notice on plaintiff, in pursuance of the statute in such case

made and provided (Clay's Digest, p. 491, § 42 ; Code, § 978), to produce the license or diploma of his intestate to practice medicine ; and it was admitted that plaintiff had notice to produce said license or diploma of his intestate, and that it could not be produced by him. There was no evidence before the jury, tending to show whether or not defendant, at the time he executed said note and took up said account, knew that said intestate had been practicing medicine in his family without a license or diploma. There was proof, that said intestate, during the period in which said medical account was made, practiced sometimes on the botanic system, as well as the old medical system ; and there was also proof that he bled, blistered with Spanish flies, and gave calomel to defendant's family, while rendering the medical services embraced in said account : but there was no proof that said intestate, while said account was being contracted, ever practiced on the botanic system in the defendant's family.

" This was all the evidence in the cause adduced by either of the parties ; and on these facts, the plaintiff, by his counsel, requested the court to charge as follows :

" 1. That a notice to plaintiff to produce, on the trial of the cause, his intestate's license or diploma to practice medicine when the account in question was contracted, and after the note was given for it to plaintiff as his administrator, without raising the objection, at the time of the execution of the note, that said intestate had no license or diploma at the time the account was contracted, (if they believe these to be the facts,) presents no bar to plaintiff's recovery on said note, although he fails to produce the license or the evidence thereof, and that if no other defence against said note be made out to their satisfaction, they must find for the plaintiff.

" 2. That to entitle plaintiff to recover on said note, he is not bound to show that his intestate, when said medical account was made, had a license or diploma to practice medicine, although he had been notified to produce it.

" 3. That if they believe the whole evidence, they must find for the plaintiff the amount of the note, with interest from its maturity.

" These several charges the court refused to give, and to each refusal the plaintiff excepted.

" The defendant then asked the court to charge the jury,—

" 1. That if they believe from the evidence that the note sued on was given for medical services performed by plaintiff's intestate, or for medicines furnished and sold, as prescribed by him as a physician, or for either of them, then plaintiff cannot recover if he practiced medicine as a botanic physician.

" 2. That in civil cases, all that is required is, that the proof shall preponderate in favor of one party or the other, and the jury must find according to the preponderance of the proof.

" 3. That although the note, on its face, imports a consideration, yet, if the proof is so far satisfactory to their minds as to produce the preponderance that the note was given for medical services performed by plaintiff's intestate, or for medical services furnished as prescribed by him as a physician ; and that said intestate, in his practice, used calomel, or any of the preparations of medicines sold, or bled his patients, or blistered them with Spanish flies,—then plaintiff cannot recover.

"These three charges were given by the court, as asked, and to the giving of each separately the plaintiff excepted."

The charges given, and the refusal to give the charges requested by plaintiff, are now assigned for error.

James E. Belser, for the appellant, contended,—

1. That the statute in force at the time the account was contracted for which the note was given, must govern the sufficiency of the notice ; that by the express terms of this statute (Clay's Digest, p. 491, § 42), the notice must be given to the physician by whom the services were rendered, and therefore his administrator could not be required to produce it.

2. That inasmuch as the note was given, not to the physician himself, but to his administrator, and given without objection, the case is taken out of the operation of the statute and decisions cited for the appellee.—Gilmer v. Ware, 19 Ala. 252.

Richards & Falkner, contra, cited Clay's Digest, pp. 487, 491, §§ 1, 2, 42 ; Code, § 978 ; Holland v. Adams, 21 Ala. 680 ; Allcot v. Barber, 1 Wend. 526.

GOLDTHWAITE, J.—If the note sued on rested on a valid consideration at the time it was given, it would impose an obligation on the maker, the force of which it would be beyond the power of the legislature to impair; but the act of 1823 not only prohibits the practice of physic or surgery by unlicensed physicians, but expressly provides that all bonds, notes, promises, and *assumpsits*, made to any person not licensed in the manner thereinafter specified, the consideration of which shall be for services rendered as a physician or surgeon prescribing for the cure of diseases, shall be utterly void.—Clay's Dig. 487, §§ 1, 2. Subsequent acts conferred the right on any physician, who had graduated at any regular medical university, to enrol his name with any of the medical boards of the State on the production of his diploma.—Clay's Dig. 488, § 9. By force of these statutes, medical services rendered by a physician who had not been licensed, or whose name had not been enrolled in a medical board of this State, formed no valid consideration for a contract of any kind; and as a necessary consequence, a note based upon such services would not be recoverable. The act of 1832 (Clay's Digest, 488, § 10) repealed the sections of the act of 1823 to which we have referred, as to physicians practicing on the botanic system; but our understanding of the last act is, that it applied to those who confined their practice to that system only. Indeed, the proviso shows conclusively that such was the intention of the legislature, as any botanic physician who administers calomel and certain other medicines in use with the regular faculty, is expressly subjected to all the penalties of the former acts.

The effect of these statutes, taken together, was to prohibit all persons from practicing as physicians, unless they were licensed by a medical board in this State, or their names were enrolled according to the provisions of the statute to which we have referred, or unless they practiced on the botanic system alone; and the necessary result of this prohibition would be, to prevent a recovery in all actions founded on contracts for medical services, unless it was proved that the persons rendering such service were not within the prohibition. The repeal of the law by the adoption of the Code did not give validity to the contract, if it was void under the old

law.—Milne v. Huber, 3 McLean, — ; McKissick v. McKissick, 6 Humph. 75 ; Mitchell v. Doggett, 1 Branch (Fla.) 356.

But although we must look to the law in force at the time the note was given, to determine its validity and effect, in relation to the evidence which governs a suit upon it a different rule obtains. If the suit was commenced since the adoption of the Code, the rules of evidence which it prescribes must govern in all civil causes ; and although, under section 978, the plaintiff is not required to prove a license, except upon two days notice by the opposite party that such proof will be required, yet, if such notice is given, it devolves upon him, whenever it is established that the contract sued upon was for medical services, to show that he is outside of the prohibition ; and this he can do by proving his license, or that he was enrolled in the medical board, or that he practiced on the Thompsonian system only.

Applying these rules to the charges requested on the part of the plaintiff below, there was no error in their refusal.

The charge, however, which asserted that the note was not recoverable if given for medicines furnished or sold by the intestate, cannot be supported. It is true that section 980 of the Code operates as a prohibition upon the sale of drugs unless a license is obtained ; but no such law was in force at the time the note was given, and if the consideration was then valid, it could not, as we have said, be affected by any subsequent statute.

We think, also, that the court laid down the law too broadly, when it instructed the jury that, in civil causes, they were bound to find according to the preponderance of the testimony. Whatever facts are necessary to be established—whether by the plaintiff, to give him a right to recover, or by the defendant, to sustain his defence—must be proved ; and although, from the nature of things, it is impossible to say what degree or quantity of evidence amounts to proof, as it must necessarily depend upon the effect it has upon the mind (1 Greenleaf on Evidence, § 2), yet it will scarcely be denied that it would be unjust to charge a defendant with a heavy debt, when the preponderance of the evidence merely inclined the mind of the jury to the side of the plaintiff ; or to mulct a man in heavy damages, when the

evidence, although it preponderated against him, left the minds of the jury in a state of great doubt and uncertainty whether he was the person who committed the act complained of. We have high authority to sustain us in saying that, in such cases, a mere preponderance of evidence might not be sufficient.—Stark. Ev. (4 Amer. edit.) 451, 452. Much, of course, depends upon the nature of the fact to be established, and in most cases the amount of evidence required would vary as the fact was more or less improbable in itself; but no matter. what might be the preponderance of testimony, if it failed to produce a rational belief in the minds of the jury as to the existence of the fact, it could not in any sense be said to be proved. We can suppose many cases where evidence would be admissible, as tending to prove facts, which would scarcely be sufficient to generate the lowest degree of belief; and if no evidence was offered by the other party, the fact could not, for that reason alone, be regarded as established. There can, as we have said, he no definite standard as to the quantity of testimony. In the absence of legal presumption, it is for the jury alone to determine upon the amount of evidence required; and the court invades their province, when it lays down an arbitrary rule, which, if followed, would force them to determine the existence of facts against their convictions as produced by the evidence.

For the errors we have noticed, the judgment must be reversed, and the cause remanded.