Cook *v.* Drais.

[*General Term, October,* 1872.]

## J. B. COOK *v.* ELIJAH DRAIS.

Where D. entered into a written contract with C. & J., as partners, J. signing the firm name in the absence and *without the knowledge of* C., to sell and deliver to them, at a specified place, *between* the 10th and 20th days of June, 1865, *from one hundred and fifty to three hundred* head of smooth merchantable hogs, the exact number to be at D.'s option, averaging *two hundred and fifty pounds gross weight and* upward—C. & J. to name the day of delivery between the 10th and 20th of June and give D. three days' notice thereof, the price per hundred pounds gross weight to be $13; and D. gave notice in May that he would fill the contract with two hundred and sixty-two head of hogs, when C. denied his liability on the contract, and no notice was ever given D. of a day for delivery; and D. was ready and willing to comply with the terms of his contract on June 19, 1865, and did then, at the place of delivery, weigh two hundred and sixty-two head of hogs, which averaged 278 2-131 pounds per head, which C. & J. could have had by paying for them, but, not doing so, D. kept and sold them—such hogs being worth, at the time and place of delivery, only $7 per hundred pounds gross weight.

1. *Held,* that the term "between" excluded both the 10th and 20th days of June, and that, upon the facts of the case, D. was required to be ready and willing to deliver on the 19th day of June; and that, under the contract, he had until that day to elect what number of hogs over one hundred and fifty to three hundred he would deliver.

2. That no actual weighing, tendering, or setting apart by D. of such hogs, was necessary to enable him to maintain an action against the defendants for their breach of contract to purchase the hogs: to be ready and willing to deliver, at the place of delivery, is all that the law requires, and the measure of his damages is the difference between the contract price, reckoning two hundred and fifty pounds per hog, and the market price at the time and place of delivery. *Quære:* If by weighing but not actually vesting property in the hogs in defendants, plaintiff could recover damages for what the hogs weighed, averaged over two hundred and fifty pounds gross weight?

3. If C. & J. were partners in the purchase of hogs, to be delivered in June of that year, J. had authority to bind C. by the above-mentioned contract, even if, as between C. & J., it was a term of the copartnership that J. should contract for no hogs without C.'s consent, unless D. knew of such term when J. contracted with him for the firm.

4. If, in such a case, the plaintiff makes out, by his evidence, a clear *prima*

*facie* right of recovery, and the defendant a *prima facie* defense, and the court expressly, by mentioning the same, charges the jury that the plaintiff must satisfy them by proof of all the material facts of his case, and then charges them, in regard to weighing the plaintiff's and defendant's evidence, that, "if upon the whole evidence they should find a preponderance of it in favor of the plaintiff, their verdict would be for him," such charge is not erroneous.

*Tilden & Hyman*, for plaintiff.

*Forrest & Lindemann*, for defendant.

YAPLE, J.   Drais brought suit in this court against Cook and one James K. Johnson, who was not served with process, as partners, and obtained a verdict against Cook for $5,301.53, upon which the court, at Special Term, rendered a judgment, overruling a motion made by Cook for a new trial.   To reverse such judgment, a petition in error is now prosecuted here by Cook.

The action was one for damages, for breach of an alleged written agreement, signed by Johnson, as for Cook and Johnson.   This agreement bears date January 4, 1865.   It states that Drais had that day sold to Cook and Johnson from 150 to 300 head of smooth merchantable hogs—the number of hogs over 150, and not exceeding 300, to be at the option of Drais.   The hogs were to average 250 pounds, or upward, gross weight; and they were to be delivered at Washington Court-house, Fayette county, Ohio, from the 10th to the 20th day of June, 1865, on such day, *between* the 10th and 20th, as Cook & Johnson might require, by giving Drais three days' notice of such day, and on delivery of the hogs, Drais was to receive for them $13 per hundred, gross weight.

The petition then avers that the defendants failed to give the plaintiff notice of the time at which they would receive the hogs, though plaintiff notified them of the number he would deliver, viz., 262 head; and that on the 19th day of June, 1865, he had 262 head of hogs, averaging 278 2-131

per head, or weighing in all 72,840 pounds gross, in every respect such as the terms of the contract required, at Washington Court-house, where he was then ready and willing to deliver them to the defendants, and to perform all the terms of the contract on his part; but that the defendants wholly failed to accept or pay for the hogs, and that the then market price of such hogs was only $7 per hundred, gross weight, at said place of delivery; and he asked for a judgment for the difference between such contract and market price, with interest from June 19, 1865.

In his answer, Cook denied all liability upon the contract, claiming that Johnson was not his partner, and had no authority to bind him. He also denied the plaintiff's readiness and willingness to perform the contract on his part, etc.

The motion for a new trial was asked on the grounds that the verdict was against the evidence; that the court, on the trial, improperly refused to admit evidence offered by the defendant, and admitted incompetent testimony offered by the plaintiff, and erred in its charges and refusals to charge to the jury. The petition in error alleges that the court erred in not granting a new trial for such reasons.

Nothing has been urged or claimed in the argument before us on the grounds of the improper admission or rejection of evidence.

First, then, was the finding of the jury manifestly against the evidence? As to the partnership between Cook and Johnson, and Cook telling Drais such partnership existed, Drais and Cook contradict each other upon every material point. Drais' testimony, if true, makes out his case; Cook's, if true, a defense.

That Cook and Johnson did purchase some lots of June delivery hogs in partnership, in that neighborhood, about that time, is beyond question. This fact was evidence to go to the jury for what, under all the circumstances, they might deem it worth, to prove a partnership in the purchase of all June hogs, though Cook signed all such con-

Cook *v.* Drais.

tracts for him and Johnson, for he was not in Washington when Johnson signed the agreement in question. Drais is also contradicted, or not borne out, in some of his statements of fact by other disinterested witnesses, who testify in the case. This was for the jury to consider in determining what credence they would give to his testimony.

Johnson, in his deposition, fully makes out a partnership between him and Cook in this transaction, and swears that Cook desired him to get out of reach of the court, so that his testimony could not be taken in the case. Such hogs fell in price from $13 per hundred gross, at the time of the contract, to $7 per hundred gross, at the time specified for delivery. All these facts the jury were to consider. And, without further recapitulating the testimony, all of which we have carefully read, we may say that we see no reason sufficient to authorize us to reverse the judgment on this ground. In fact, we think it most likely that the plaintiff, Drais, would always recover before a jury on this evidence. From the time of contracting until the time of delivery, the price of hogs fell from $13 per 100 pounds to $7 per 100 pounds gross weight, and this is a circumstance almost always having a controlling weight with a jury in a case otherwise evenly balanced upon the evidence. It is true that it may be said that the chance of gaining money by a plaintiff ought to discredit his case, upon the ground of motive, as much as the defendant's defense should be questioned by his chance of losing the same amount; that the prospect of gain is as potent as that of loss, or that that which is the stronger can not be ascertained by any general rule, but depends solely upon the nature of the particular persons involved in the transaction. All this may be philosophically correct, yet juries almost invariably attribute the greater force to the prospect of loss; and this case would never, perhaps, become an exception to such usual result.

We are next brought to the consideration of the charges of the court given and refused, premising that the whole

charge of the court to the jury has not been brought before us.                                                              \

The defendant, Cook, asked the court to charge the jury that " to authorize a recovery, the burden of proof is with the plaintiff to prove that Johnson was authorized to use the name of Cook, and bind him in entering into the contract, and execute the instrument in controversy. As a matter of law, this authority may be expressly given or may be inferred from circumstances; but, upon the case here presented, if the jury believe that Cook did not, by his conduct or otherwise, authorize Johnson to enter into the contract, and did not by his *acts* or *declarations,* in fact, induce and lead Drais to believe that he intended so to authorize him to act, on the faith of which he did so enter into the contract, then the defendant is not liable in this action, and the verdict should be in his favor."

This charge the court gave as asked.

The defendant then asked the court further to charge that "it was incumbent on Drais, under the contract in evidence in the case, to exercise his option to determine for how many hogs the instrument should operate as a contract of sale, and to give notice of such election to Cook and Johnson, or one of them, if partners, within a reasonable time, and to notify them that he would be prepared to deliver the number so designated on the 10th to the 19th of June, and not the 20th of June, 1865, and it is incumbent on the plaintiff to prove these facts, and if the jury are of the opinion that they are not sufficiently proved, the verdict of the jury should be for the defendant."

This charge the court refused to give as asked, but gave it with this qualification: " But if you believe that Cook and Johnson were partners, and that Cook repudiated the contract and refused to be bound by it, that would excuse the plaintiff from exercising the option, if he chose to do so."

The court thus charged the jury that the last day upon which Drais, the plaintiff, could legally insist upon filling

the contract, was June 19, 1865, and this was correct. " *Between* " two days named excludes both.

The court also charged the jury that, within a reasonable time, under all the circumstances of the case, before the earliest day named in the contract for the delivery of the hogs, it was Drais' duty to notify Cook and Johnson of the number of hogs, above the *minimum* number required by the contract, he intended to deliver to them on the day, between the 10th and 20th of June, that they should name, and advise him three days in advance of the time of delivery, unless Cook had previously denied all liability upon the contract.

This charge was given, we presume, because another judge of this court, at a former term, had decided, on demurrer to an amended petition, that it was incumbent on Drais to make such election of number and give such notice. But that was clearly error. The contract required Drais to make no such election in advance of the day fixed by Cook and Johnson for the delivery of the hogs, or to give any such notice in advance of such fixed day. A contract by a seller to deliver from one hundred and fifty to three hundred hogs, at his option, on a given day, gives him until the day of delivery to exercise his option as to number. The length of time to deliver, and the option as to how many the seller will deliver at such time, go together and end together. They are not separable in point of time.

This our Supreme Court has expressly held, in *Nixon & Nutter* v. *Nixon*, 21 Ohio St. —. There the plaintiff, on August 21, 1866, made a contract with the defendant for the sale of from fifty to one hundred head of hogs, to be delivered at a place named, between Christmas and New Year's following, the hogs to weigh from twenty-five to one hundred pounds, etc.; and in an action against the defendant for refusing to accept, the court say : " The plaintiff was not bound to notify the defendant before the time of delivery of the number of hogs he intended to deliver, and the giving of such notice would not preclude the plaintiff

from tendering a less number than was specified in the notice, provided there was no fraud, and the notice did not operate to mislead the defendant to his prejudice."

The charge, then, both as asked and given, was more favorable to Cook than it ought to have been, and he can not complain of it on that account.

The defendant, Cook, then further asked the court to charge the jury, that, "unless the jury are satisfied from the evidence, that on some day prior to June 20, 1865, the plaintiff had two hundred and sixty-two head of hogs of the description mentioned in the contract, *and all of them weighed, so that they were in a condition to be paid for and received by Cook and Johnson,* the defendant is entitled to a verdict, unless there is also sufficient evidence that Cook and Johnson, or either of them, by language or conduct, expressly waived the performance of these acts." This charge the court also refused to give as asked, but gave the same with this qualification: "But such a *tender* would not be necessary, so far as the defendant is concerned, if you believe, from the evidence, that the defendant or Johnson, if partners, absolutely refused to recognize or to perform his part of the contract, so as to render it idle and useless for the plaintiff to weigh all the hogs on or before the 19th of June."

In considering this charge, let us inquire what was the *gist* of the action. It was simply to recover damages for a breach of a contract for the sale of property, not for the price of property actually sold and delivered under and in pursuance of such contract of sale. To recover damages for the mere breach of a contract of sale of personal property, all that the plaintiff need aver and prove is readiness and willingness to perform the conditions of the contract on his part; he need not tender, or in the absence of the opposite party, actually set apart, weigh, or number the property contracted to be sold, which would be equivalent to a tender. This is settled by such an unbroken current of authorities, both English and American, that we deem it useless to cite any in its support.

But, when the seller wishes to vest property contracted to be sold in the buyer, charge him with its price and place it at his risk—so that if destroyed, the loss would fall upon the buyer and not the seller—a tender, or its equivalent, must be made. The charge asked confounded the two subjects, and was erroneous. Here again the error was against Drais, for he kept the hogs, and, we presume, afterward disposed of them at a loss, not for Cook and Johnson, but upon his own account. He seems to have weighed the hogs only to get at the true amount of his damages, and there is no complaint that he has recovered too much; so we are not called upon, and do not decide whether or not he should have recovered only on 65,500 pounds for 262 hogs, at 250 pounds gross each, instead of on 72,840 pounds gross, for such number.

It is next objected that the court charged the jury, that, "if upon the whole evidence, they should find a preponderance of it in favor of the plaintiff, their verdict would be for him."

The objection seems to be, that the charge required the jury to find a verdict in favor of the plaintiff, if he had before them more evidence than the defendant, even though his evidence may not have made out a *prima facie* case in his favor.

In view of the evidence (and it is all before us), and of the other charges, so far as they have been set out in the bill of exceptions, we think this charge is not fairly liable to such construction. The plaintiff surely made out before the jury a strong *prima facie* case; and the defendant, a *prima facie* defense. The court had also, in the very words asked by the defendant's counsel, charged the jury that it was incumbent upon the plaintiff to satisfy them, upon the evidence, of the essential facts upon which his case depended. This charge, then, was no more than telling the jury that the plaintiff was not to prove his case beyond a reasonable doubt, but merely by a preponderance of evidence. It is difficult to see how a jury could have failed

to understand it, or how it could have misled them in this case.

*Long* v. *Hitchcock*, 38 Eng. C. L. 255, cited by Cook's counsel to us, was not a case in error. It was a charge to a jury. One witness, a servant, was the only witness in the cause, and he was for the plaintiff. He was asked if he had not made different statements to his master, and he did not know but what he had, but, if so, the facts were as he then stated. A juror desired the master sworn as a witness; the judge said that could not be, as the witness had not denied making such statements to him, but that it made little difference, as the jury must be satisfied of the truth of the facts sworn to, in order to find for the plaintiff.

*Parker* v. *Johnson*, 25 Georgia, 576, was the case of an action for breach of warranty of soundness in the sale of a slave, and the question was whether the disease originated before or after the sale. The court charged that the jury should find according to the weight of *probability*. This charge was held erroneous.

In *Mays* v. *Williams*, 27 Ala. 267, it was doubtful whether the defendant had proved an essential element in his defense at all, such defense being new matter. Yet, the court charged, that all required was that the proof should preponderate in favor of one party or the other, and the jury must find according to the preponderance of the proof. This was rightly held error in that case, for neither party had any proof at all on the essential point which the defendant was bound to make out, but in the cause, generally, the defendant had, perhaps, offered the greatest amount of evidence.

In *Lexington Fire and Insurance Company* v. *Paver*, 16 Ohio, 324, the court simply reasons upon the nature of evidence, generally, in illustrating the difference between proof beyond a reasonable doubt and by a preponderance of testimony. Language must be limited to and construed by the context, or it will mislead us widely where accuracy is essential. An eminent English judge has said that the

English language is yet so imperfect, that one-half that is written in it can not be understood, unless interpreted by the context. Upon the evidence, and in view of such other charges as were given in this case, this charge was not erroneous.

And, lastly, it is objected that the court charged the jury, "if there was a partnership, or were representations by the defendant, Cook, that there was a partnership, the verdict would be against him."

It is obvious from the whole case, and from the arguments of counsel, that this charge was given with others by the court, stating that if all other requisite facts were proved, and Johnson alone made the contract in the absence and without the actual knowledge of Cook, such was the law.

This was not error, for if there was such partnership, Johnson was Cook's agent to bind him by any contract made within the scope of the partnership business. *Myers v. Standart*, 11 Ohio St. 40.

Any secret understanding between Cook and Johnson, that Cook alone should buy hogs, or that Johnson should not buy without Cook's express assent to every purchase, unless brought to Drais' knowledge, would not be binding on Drais. Limited partnerships are regulated in this state by statute, the terms of which a party must pursue, if he would not be bound, generally, by his copartner's contracts within the scope of the partnership business. It is said that representations by Cook to others, that he was such partner with Johnson, unless communicated to Drais, would not bind Cook, if he were actually a partner. This may be so, but we think the fair meaning of the charge given, was, "representations made to plaintiff." It is the very language the defendant asked the court to give in the first charge, and which was given. It does not say representations made to persons in the community, and such is not its meaning when taken in connection with the entire context.

The judgment will be affirmed, but without the statutory penalty, in relation to which the clerk is directed to make the proper entry.