No. 857

First Circuit

REED v. FIDELITY & GUARANTY FIRE CORP. OF BALTIMORE, MD.

(October 7, 1931. Opinion and Decree.)

Bascom D. Talley, of Bogalusa, attorney for plaintiff, appellee.

Harvey E. Ellis and Frank B. Ellis, of Covington, attorneys for defendant, appellant.

ELLIOTT, J. Jesse Reed claims of Fidelity and Guaranty Fire Corporation of Baltimore, Md., the sum of $500 on an insurance policy, with interest; 25 per cent thereon as statutory damages; and $175 in addition as attorney's fees. He alleges that he insured his automobile in the defendant company against loss by theft, that it was stolen, and that he has never heard of it since.

W. F. Simmons, sole owner and proprietor of the business in Bogalusa known as the W. F. Simmons Auto Company, alleging himself to be the holder and the owner of notes, to secure which the insurance was taken out, intervened in the suit and prays that the amount due on the policy be paid to him.

Defendant, answering the demand of the plaintiff, denies liability, and alleges that plaintiff obtained the policy by fraud and misrepresentation. That certain facts, warranted in the policy to be true, were false and untrue, and that the policy is not enforceable on said account. It prays that plaintiff's demand be rejected.

Answering the intervention of Simmons, it reiterates its charges made against the plaintiff; alleges that Simmons was Reed's agent in making the misrepresentations and in procuring the insurance, and prays that his demand be rejected.

The lower court rendered judgment in favor of plaintiff and intervener for $500 with interest, and for $150 as attorney's fees, but rejected plaintiff's demand for 25 per cent damages. Defendant appealed.

Plaintiff and intervener, answering the appeal, pray that the judgment be amended so as to allow the 25 per cent damages claimed by them; that the judgment be otherwise affirmed.

The defendant filed an exception of no cause or right of action, and also one of nonjoinder. The exception of no cause or right of action was overruled, but that

of nonjoinder resulted in an order from the court that Washington Bank & Trust Company be made a party to the suit.

Washington Bank & Trust Company assigned to Simmons twelve notes, to secure which the policy in question had been procured, subrogating him to all its rights against the defendant.

The defendant attacked this subrogation as being null and void, but its attack, not having been acted on in the lower court, is not before us on appeal. It also alleged that Simmons had attempted to appear in court in his trade name of Simmons Auto Company, and urged that a party could not plead nor act under a trade-name. We construe a statement which we find in defendant's brief, however, to mean that it does not insist on these exceptions, and that same may be regarded as abandoned. We have, therefore, taken into account only the merits of the case.

Defendant alleges that plaintiff represented that the car was a 1927 model, when it was in fact a 1925 model. The policy states that it is to be void if the insured has concealed or misrepresented any material fact or circumstance concerning the insurance or the subject thereof. Misrepresentation of the model is, under the policy, a breach of warranty.

The evidence shows that the car is a 1925 model. The plaintiff, seemingly apprehensive that the policy might be attacked on this ground, alleges (we abbreviate but do not otherwise change his averment): "That he authorized W. F. Simmons to procure this insurance; * * * and the said W. F. Simmons gave to S. Lacey Dickerson, the agent of the defendant company, the serial and motor number of the automobile and asked him to write the policy, and the said Dickerson had on his desk, and referred to, a little book from which he secured the model of the car and the year of its manufacture; that petitioner did not himself know the year in which the car had been manufactured, and made no representations to defendant's agent on the subject, but exhibited the car itself," etc.

According to Mr. Reed, he bought the car from Simmons for $675, paying $175 in cash and executed twelve notes, amounting in the aggregate to $500, representing the balance of the purchase price. That under agreement with Simmons, the car was insured to protect the notes. That Simmons and himself went into Washington Bank & Trust Company to have the notes fixed up, and met Dickerson while in the bank; that Simmons asked him if it would be satisfactory to give Dickerson the insurance; that he assented; that they (meaning Simmons and himself) had the car 'standing outside the bank; that Mr. Dickerson looked at it, and then went down to his office and fixed up the insurance; that he had a bill of sale of the car, which Mr. Dickerson saw, and made on it a notation, "fire and theft only." The document in question was produced; it is in fact not a bill of sale, but an invoice, made out with lead pencil. The memoranda which the witness mentioned is on it, and appears to have been written by a different hand than the one by which the invoice was made out. The invoice referred to as a bill of sale shows the price of the car in the sale from Simmons to Reed, its motor and serial number, but does not state the model. Further testifying, he says that Mr. Dickerson asked him no question concerning the model of the car, and did not in his presence or hearing ask Mr. Simmons any question concerning the same. That he authorized Mr. Simmons to procure the insurance;

that Simmons in doing so acted as his agent; that Simmons and Mr. Dickerson left the bank together; that he remained until they were gone; he did not know what representations Simmons made to Dickerson after they left the bank; that Dickerson did not get the information for writing the policy by an examination of the automobile, but relied upon the information given him by Simmons; that the policy was not delivered to him, but was sent by Dickerson direct to the Washington Bank & Trust Company, to which the loss was made payable.

According to Simmons, he and Reed went into the bank together to have the notes drawn up that were to be given him for the credit price of the car. Dickerson came in, upon which he suggested to Reed that the insurance be given Dickerson, to which Reed assented; that he then handed Dickerson the bill of sale. This paper called a bill of sale is in fact an invoice. He says that it contained the information Dickerson wanted in order to make out the policy. That Dickerson made a notation; that Dickerson and himself then left the bank, Reed not going with them; that he (Simmons) did not go to Dickerson's office; that Dickerson made the policy payable to and mailed it direct to the bank; that he never represented the model of the car to anybody; that the model was never mentioned in the conversation between him and Dickerson.

Simmons and Reed, however, are not in accord on the question of agency. Simmons says he was not Reed's agent in procuring the insurance; that he merely suggested to Reed that he give it to Mr. Dickerson, and that Reed assented.

Mr. Simmons, further questioned, says:

"Q. You did not give him any information?

"A. He asked Mr. Reed where he lived and where he was working; and I had given Mr. Reed the bill of sale. Mr. Reed handed Mr. Dickerson the bill of sale, and Mr. Dickerson asked Mr. Reed what kind of insurance he wanted. Mr. Reed said, 'Fire and theft'; and Mr. Dickerson put the bill of sale in his pocket."

Dickerson says:

"I happened to meet W. F. Simmons in the Washington Bank and Trust Company, and he gave me a memorandum of the car number, motor number, and I asked him the year model, and I issued the policy for Jesse Reed, and I never saw Jesse Reed until after the loss occurred."

Further questioned, he again said that he had a conversation with Simmons in the Washington Bank & Trust Company; that if Reed was present, he did not know it, and did not see him; that no one except Simmons discussed the policy with him prior to the alleged theft; that a memorandum was given him by Simmons in the Washington Bank & Trust Company, and he issued the policy based thereon; that he never saw the car at any time; that Simmons while in the bank, at his request, gave him the model of the car.

"Q. What was the model of the car he gave you? What year?

"A. 1927, as I remember. Whatever was in the policy.

"Q. Did you have any means of knowing what the model of that car was?

"A. No, sir. Nothing except Mr. Simmons' word for it—

"Q. Did you ever see this alleged bill of sale which contains the motor and serial numbers of the car?

"A. I possibly have. I am not sure; but I got my memoranda from Mr. Simmons. I do not know if this is the original bill of sale.

"Q. Did you get that bill of sale from Mr. Reed?

"A. Mr. Simmons."

He was shown the bill of sale which, as stated, is an invoice, and then asked:

"Q. Is the handwriting in the circle on the bill of sale yours?

"A. No, sir."

He further states that Simmons gave him a memorandum in writing containing the model of the car; asked to produce it, and he answered:

"It may be in my old office. I don't know whether it is or not."

No memoranda of any kind was produced by him. The only memoranda produced was the invoice produced by Reed and Simmons with the memorandum on it in lead pencil. It seems likely from this that the memorandum which Dickerson received was this invoice, which shows the price that Reed had paid and was to pay for the car, its serial and motor number, but says nothing about the model.

The authentic act of sale conveying the car from Simmons to Reed is a printed form. Before it was used it had blank spaces left in it for the motor and serial number and the model. The blanks for the serial and motor number were filled up, but the space in which the model was to have been stated was left blank. It would seem from this that the authentic act was likely passed upon the information contained in the invoice produced by Reed and Simmons.

Dickerson thought he wrote the policy the same day he had the conversation with Simmons in the bank. The invoice and the act of sale are both dated September 25, 1929; but the policy was not issued until September 28, 1929.

He who contends that he is exonerated must prove the payment or the fact which has produced the extinction of the obligation. Civil Code, art. 2232. The defendant cites us cases holding that the misrepresentation of the model of a car is justifiable grounds for refusing payment of a policy; but the question presently in hand does not depend on authorities, but on the credibility of witnesses and the preponderance of proof. According to Messrs. Reed and Simmons, they did not furnish Mr. Dickerson with any information concerning the model of the car. Dickerson is positive that Simmons furnished him the model appearing in the policy. The burden of proof is on the defendant to show misrepresentation on the part of the insured. The preponderance of the proof is against the defendant in the matter of misrepresentation concerning the model. And in the matter of credibility we are unable to conclude that the plaintiff and intervener is any less credible than the agent that represented defendant in the matter of the insurance. We therefore decline to hold that the lower court erred in refusing to release the defendant on the ground that plaintiff had misrepresented the model of the car.

The next defense is that the defendant is discharged because the car was not kept in a garage as the policy requires. The stipulation is that, "The automobile described is usually kept in private garage located on Huron Avenue, Bogalusa, La."

This is a warranty, and the defendant urges that it was violated.

Reed testifies that on coming home from the Covington Fair, about midnight, on the night of October 20, 1929, he left the automobile in front of his house, and the next morning it was gone. His garage is close to, if not attached to, his residence. He explains his act in leaving the automobile on the street by saying "that it (meaning his garage) was so close to drive in, I left it out."

It further appears that the transmission of the car could be locked. Reed says, "I had it locked, and the key was in my pocket." Asked if he knew whether it was locked or not, his answer was, "I tried it and it did not shift." He insists that the car was locked, that he locked it. But if he had locked it, he should have had the key and produced it on the trial. Then, again, if the transmission had been locked, the car could not have been driven away unless the key was left in the lock. The policy, however, did not require that the car be kept in the garage every night nor that its transmission be kept locked when not in use. The word "usually," as defined in standard dictionaries, is said to mean "commonly," "customarily," "ordinarily." The language "usually kept in" does not mean that the automobile had to be kept in the garage all the time, nor was more care required in that respect at night than in the daytime. In a doubtful case the agreement is interpreted against him who has contracted the obligation. Civil Code, arts. 1957, 1958.

We do not feel justified in holding that the policy is not enforceable on this account. The warranty of the policy on this subject is not shown to have been violated within the sense and meaning of the policy.

Defendant alleges that plaintiff did not render proper assistance in helping to recover the car.

The defense is:

"That plaintiff failed to assist your defendant in tracing and locating said automobile alleged to have been stolen, in that numbers of the license on said car were given as number 23-358 and 23-385; that your defendant investigated said license numbers, and neither of them were taken out in the name of plaintiff or covered said car."

The plaintiff furnished defendant, as the license number, one of the numbers mentioned. It was investigated and found to be incorrect. He then furnished the other number above mentioned, and it was investigated, and was found to be incorrect.

Reed testified that the car had on it, when stolen, the same license that was on it when he bought it from Simmons. He obtained from Simmons the same license number he furnished the defendant.

Simmons, questioned at length on the subject, says that he bought the car from H. A. Testard. That he first sold it to a man named Greenburg, who returned it; that he then sold it to a man living near Bogalusa, whose name he could not remember, keeping no record of this sale. This man, he says, paid a small price, for which he gave him a receipt; that the man kept the car about a month and bought a license for it, then returned it. That he knew this man's uncle; that the uncle lived in Bogalusa. Asked the uncle's name, he had forgotten the name of the uncle. After this man returned the car, he sold it to Reed for $675, from whom he claims to have exacted $175 cash and took notes amounting to $500 representing the balance of the purchase price; that the insurance, the subject of this suit, was taken out in order to protect these notes. In case of recovery, the amount recovered goes to Simmons.

The facts in the case of Mrs. Nell Perry v. Fidelity & Guaranty Fire Corp., 17 La. App. 563, 136 So. 755, this day decided, in which a similar situation exists, and defendant's contention in that case have been kept in mind.

The policy stipulation on the subject of co-operation is as follows:

"In the event of loss, and whenever requested by the defendant, assured shall assist in the recovery of the property insured hereunder, by means of replevin proceedings or otherwise; in effecting settlement, securing evidence, obtaining the attendance of witnesses and prosecuting suits to such an extent and in such manner as is deemed desirable by the Company; and this Company shall reimburse the assured for any expenses incurred at its request."

The co-operation required by the policy does not consist in furnishing the insurer with the license number of the car in case it is stolen. The co-operation required concerns other matters.

Consequently, assured's failure to furnish the correct license number is not a ground for holding that plaintiff's failure in that respect constituted a breach of the policy.

Defendant finally alleges that the terms of the policy were violated, in that no proof of loss was filed with defendant within sixty days after said alleged loss, as provided in the policy, which fact estops plaintiff and intervener from claiming any damages under the terms of the policy.

The plaintiff alleges that on or before October 25, 1929, he and W. F. Simmons made demand on the defendant for blanks upon which to make proof of loss and furnished the defendant with all the data required in the ordinary proof of loss; that the company refused to give them blanks on which to make proof of loss until they arrived at an amicable settlement; that more than sixty days had elapsed since making said demand.

The evidence shows that this demand was made within two or three days after the loss of the car. It is sufficient to find in the record proof of loss made out in due form, dated October 22, 1929.

Under the law, Act 59 of 1921, sec. 3, defendant's failure to furnish blanks for proof of loss when requested by the plaintiff, and to pay the loss within sixty days thereafter, renders the insurance company liable to the statutory damages provided for in that act, and at the same time creates a statutory right in the assured to demand the same. This defense, therefore, cannot prevail.

The judgment appealed from, to the extent that plaintiff's demand for 25 per cent damages under the Act 59 of 1921, sec. 3, was refused, is erroneous. In all other respects it is correct.

The judgment appealed from is therefore annulled, avoided, and set aside to the extent that plaintiff's demand for 25 per cent damages is refused; and it is now ordered, adjudged, and decreed that plaintiff, Jesse Reed, have and recover judgment against Fidelity and Guaranty Fire Corporation of Baltimore, Md., for 25 per cent damages as provided in Act 59 of 1921, sec. 3; that the judgment herein appealed from in all other respects be affirmed.

Defendant-appellant to pay costs of both courts.

LeBLANC, J. (dissenting). In this case I agree with the majority opinion in all points except as to the alleged breach of warranty, regarding the description of the automobile. The opinion concedes that the age of the car is misstated in the policy. It holds, however, that there was no misrepresentation on the part of Simmons, who acted as plaintiff's agent, as he did not supply the information regarding the age of the automobile. If Simmons did not give that information as the agent testifies he did, I am at a loss to know from what source it was derived. Simmons' testimony in my opinion is not any more

worthy of belief than Dickerson's, the insurance agent.

The circumstances, I believe, favor Dickerson on this point, and for these reasons I respectfully dissent.