## DEMARY v. ROYAL INDEMNITY CO.[*]

### No. 1865.

Court of Appeal of Louisiana. First Circuit.

June 30, 1938.

*Rehearing granted July 27, 1938.

Clement M. Moss, of Lake Charles, for appellant.

Pujo, Hardin & Porter, of Lake Charles, and John H. Benckenstein, of Beaumont, Tex., for appellee.

LE BLANC, Judge.

This is a suit brought by the plaintiff F. J. Demary on a policy of burglary insurance in which he seeks to recover judgment in the sum of $699.75 against the defendant Royal Indemnity Company which issued the policy.

Plaintiff who owned and operated a cafe located on the Old Spanish Trail in Calcasieu Parish near the border line between Louisiana and Texas, alleges in his petition that at about one o'clock in the morning of August 11, 1935, two men entered the premises owned and operated by him, overpowered his employees and feloniously took and carried away a sum of money amounting to $699.75, in currency, coin and bank notes. He alleges in detail his entire compliance with all of the terms, provisions and obligations under the contract of insurance, and immediately after the robbery gave due notice thereof to a duly authorized representative of the defendant, and to the defendant itself at its head office in New York, and though he often requested them, the defendant did not provide him with the forms required for proof of loss, but on the contrary denied all liability under the policy. He alleges further that he nevertheless did furnish the necessary proof of loss and did not file this suit until three months thereafter and not until defendant had disclaimed and denied all liability. Plaintiff did not annex the policy forming the contract of insurance sued on to his petition, but supplied the same on a demand for oyer upon an order issued by the district judge.

The defendant admits having issued the policy and that the plaintiff paid the premiums thereunder but claims that the policy provisions were violated by the plaintiff in several respects which it sets out in detail, and therefore that there is no liability on its part. The breaches of warranties may be listed as follows: (1) Whereas the plaintiff declares in the policy that the business conducted in the premises was wholesale and retail liquors and small cafe, the fact is that it was not restricted to those operations, but included a gambling business as well. (2) Whereas another of the declarations also constituting a warranty under the terms of the policy, the name of the insured is given as "Lake Charles Liquor Store and F. J. Demary." and further that the portion of the building occupied solely by him in conducting his business is represented to be his "entirely", the fact is that that part of the business in which gambling was conducted and from which the larger amount of money was taken, was owned by himself with another in a form of partnership. (3) The defendant further contends that with regard to the silver money amounting to the sum of $619.00 which was robbed, the contract of insurance is illegal, null and void, because that coin constituted gambling paraphernalia, and any contract by which plaintiff might attempt to recover would not be enforceable as it would be against public policy in that it would promote gambling which is a vice denounced by the Constitution of this state. (4) That whereas under the terms of the policy plaintiff had to maintain two custodians on duty, the facts developed that there was only one such custodian on the premises at the time of the robbery. (5) That plaintiff failed to keep a set of books and accounts as he was required to do under one of the declarations forming part of the policy.

Upon trial of the case on the issues as thus made up under the pleadings, the district judge rendered judgment in favor of the plaintiff for the full amount of his demand, and the defendant has taken this appeal. The learned trial judge handed down written reasons for judgment in which he carefully considered and discussed, and finally rejected each and every defense presented.

Taking up these defenses in the order in which we have them listed, we may state that the evidence is clearly to the effect, and indeed it is not disputed, that in connection with his business of cafe and saloon, the plaintiff also operated a club room in which various gambling games were conducted. Whilst it is true that the declarations made by the plaintiff in the policy show that the business was restricted to the two therein mentioned, the evidence shows undoubtedly that the

general agent of the defendant insurance company who had his headquarters in the city of Lake Charles, knew, at the time the policy of insurance was written and delivered that the plaintiff also operated a gambling club room in the same premises, in connection with his other businesses. Indeed, the evidence tends somewhat to show that this agent of the defendant was entrusted entirely by the plaintiff to give him the insurance protection which he needed. It leaves some doubt in our minds as to whether the plaintiff himself made any specific declarations at all or gave any detailed information to the agent, seemingly relying on the latter to prepare and supply him with a contract of insurance which would cover any losses he might sustain from robbery. It appears from the testimony of this agent that he considered the risk more hazardous because of the location of the business out in the country, and for that reason would not assume full responsibility in issuing the policy himself, as customary, but sent the application to the home office where the policy was actually written. When asked whether he advised the home office that the insured operated a gambling business at the "Border Cafe" he answered: "We show that they operated a wholesale and retail liquor business and small cafe". Asked further if that was the extent of the information he gave about the nature of the business, his answer is: "Yes, that is all that shows on the policy." Whilst these are not as direct answers as might have been given and they may be construed to mean in effect that the agent did not supply the home office with that particular information, under the law as we view it, we can not see how his failure to do so can be charged against this insured in an effort to vitiate the policy. The evidence further shows that after the policy was written in the home office, it was forwarded to this agent, who, as he says, had to attach his signature to it, which he did, and then delivered it to the insured. Moreover, the testimony shows that afterwards, a very important rider for which an additional premium was charged and paid, was attached to the policy and it became necessary that the agent countersign it which he did. Certainly at this time he does not dispute that he, acting as agent for the defendant company, had full and complete knowledge of the nature of all of the plaintiff's business, and under the well known rule which governs in such cases, his knowledge is im-putable to his principal. Under circumstances where the agent of an insurance company has full knowledge of the facts in connection with the issuance of the policy, and the policy is issued, the insurance company can not claim a forfeiture on the ground of misrepresentation. Hardy v. Commercial Standard Insurance Company, 172 La. 500, 134 So. 407; Parker v. Citizen Fire Insurance Company of Missouri, 4 La.App. 711.

The second defense urged is based on the ground of a misrepresentation as to the ownership of the gambling business conducted in the premises. The defendant contends that this part of the business belonged to a partnership composed of the plaintiff and a man named Tommy Campbell who was in charge of the gambling operations. A partnership is sought to be evoked under the theory that the plaintiff furnished the capital and Campbell furnished his skill and work in a joint venture, in which the latter participated on a percentage basis and also shared in whatever losses there might be.

Whilst in some cases, under the provisions of Article 2809 of the Revised Civil Code, the elements constituting a partnership may be drawn from a situation in which property, credit, skill and industry may be furnished by either of the parties, in such proportions as they may mutually agree, we do not think that the testimony in this case is of the nature to support any such agreement on the part of these two persons. In the case of Chaffraix & Agar v. Price, Hine & Tupper, 29 La.Ann. 176, the court held, as reflected in the syllabus, "where a party shares in the profits of a partnership, not as a principal, but as an agent or employee, who receives a certain proportion of the profits in compensation of his services, he is not a partner." That case seems to have been a thoroughly considered one on the question of a partnership of the character such as the defendant contends exists in this case. It was clearly the opinion of the court that whilst participation in the profits of a business might well serve as the basis of the establishment of a partnership, especially in the relation of the parties with third. persons, it does not necessarily follow that such an agreement produced the effect of a partnership. At most, such participation is held to be but presumptive proof that there is a partnership, but like all other presumptions is subject to rebuttal by other

and more convincing proof. The court finally concluded that in each case, the circumstances presented must serve as its guide, "and if in considering them the participation in the profits is clearly shown to be in the character of an agent or employee, the presumption of partnership is repelled."

In the case presently before us we can not view Campbell's position in any other light than that of an employee who, instead of working on a straight salary, was willing to take his chance on a percentage basis, and necessarily, if he was paid on such a basis, as the testimony shows, if on any occasion there was a loss, that loss was charged against him and he had to sustain his share of it. The important and controlling bit of testimony however which seems to us to repel by all means the idea of a partnership, is that which shows that the plaintiff had the right at all times, to discharge Campbell, as he saw fit. Certainly that is not a right which a partner enjoys if he becomes dissatisfied at any time with his co-partner. The right to hire and to discharge is one which rests with an employer, and so resting with the plaintiff in this case, makes him in our opinion, the employer and not the partner of Campbell.

■■ Under the third defense presented, the contention is that the silver coin which was used in the gambling operations and which was kept separately from the other money handled in the other businesses, constituted gambling paraphernalia and that in effect all that the plaintiff is attempting to do in this case is to recover that paraphernalia which should not be permitted as granting him such relief would amount to the promotion and encouragement of a vice which is condemned by the Constitution and prohibited by the laws of this state. In our opinion it would require a rather strained interpretation of the contract of insurance to apply such meaning to this silver coin. The rule of law in construing policies of insurance is, on the contrary, to give a liberal interpretation in favor of the assured.

Under the contention made by the defendant, the only result would be to hold that the silver money and coins constituted ordinary chips used as a medium of exchange across the table in a gambling game. Whilst it is correct to say that it was used for change, we can not agree that for the purpose of construing this contract between the plaintiff and the defendant it was gambling paraphernalia. Under our appreciation of the testimony it was optional with the player who participated in the gambling games to use either chips or coin for change. If he used the silver coin, it may be that after he had finished playing he was requested to let the silver remain and he was given currency instead. Certainly if he chose to take the silver coin which was in his possession, and belonged to him, we do not know by what right his wish could have been opposed.

The most that can be said therefore is that this silver coin may have served to facilitate the gambling. Conceding that that part of it of which the plaintiff was robbed, had come in his possession under circumstances which the law prohibited, he nevertheless was the owner of it and had a right to protect himself against its loss by insurance, provided any insurer, like the defendant company, was willing to give him that protection. The mere fact that it was insured, did not in our opinion, tend to promote gambling and we seriously doubt that many, if any, of those who participated in the gambling that was being conducted knew, or were interested whether there was any such insurance or not. The rule of law which governs on this point, we think is well expressed in Ruling Case Law, Vol. 14, page 887, section 63, as follows:

"The general rule may be said to be that if the effect of an insurance contract on property illegally kept or used is to promote or encourage the illegal acts or business in which such property is used, the contract is void as against public policy; but if such contract does not promote or encourage such unlawful acts or business, it is not void, although it may be collaterally connected with the unlawful acts or business."

Certainly there is nothing in the contract of insurance sued on in this case, and not a word of testimony is found in the record tending to show that the policy was issued in the furtherance of a gambling business, nor that its issuance had any such effect. It is only in a remote and incidental way that it may be said to have any such connection with the business and under the rule as stated, it can not be held to be void and without effect.

■ The learned trial judge disposed of the next defense presented as follows:

"The fourth defense presented is that defendant did not maintain two custodians

on the premises at all times. In the declarations attached to the policy and made a part thereof under Schedule 'Office · Robbery Endorsement', is shown: 'In consideration of the premium provided for in this policy, it is hereby understood and agreed that the insurance applying under Section C of Item 10 of the declaration, being under insuring paragraph 3, attaches and applies only in the amount specified for each location in the following schedule: (B) O. S. T. Calcasieu Parish, La. Number of Custodians on duty, Two, guard or alarm within premises, none, amount of insurance $1,500.00.' Although it is not specifically provided that the number of custodians shall be on duty at all times, it is presumed that this is the intention of this provision of the policy. It will be noted that there is nothing said about these custodians being within or upon the premises, and the word custodian, according to Webster, is defined as: 'One who has care or custody, as of some public building, a keeper.' The evidence in this case shows that there was one man actually within the premises at the time the burglary occurred, and that the other custodian on duty had merely crossed the bridge and gone a distance of approximately 400 feet away from the premises at the time of the burglary, and that within four or five minutes after the highwaymen actually subdued the first custodian there was another custodian upon the premises who arrived before the burglary was completed, who was also subdued and tied hand and foot. Had the policy provided that the custodian must be upon or in the premises at all times, in the opinion of this court payment under this policy could have been avoided for a breach of this promissory warranty. It appears however that the insured went even farther than is contemplated by the policy, for the evidence showed that one of the custodians was armed, and was in reality a guard instead of a mere custodian or keeper, which was provided for in the policy. Insurance companies who assume the risks such as' was assumed in this policy of insurance have never been permitted to escape their liability · in this State by a mere quibble or by giving a false and unnatural interpretation to the policy which they write. A contract of insurance prepared by an insurance company will be construed liberally as to the insured and strictly as against the insurance company. Corp. of Roman Catholic Church of Eunice v. Royal Insurance Co., Limited, 104 So. 383, 158 La.

601. In the case of Reed v. Fidelity & Guaranty Fire Corp. of Baltimore, Md., 17 La.App. 567, 136 So. 757, the Court held: That an insured could recover a theft policy for the loss of an automobile which had been left in front of his house on the night of the theft, while the policy provided that the automobile was usually kept in a private garage. We see nothing in this provision of the policy and the schedule attached thereto that would enable the insurer to avoid the payment for a noncompliance with a promissory warranty."

We find ourselves in thorough accord with his views and the conclusion reached on this point, and adopt his reasons as our own in rejecting that defense.

The last defense presented is that the plaintiff failed to comply with the following provision in the policy: "The Company shall not be liable for loss or damage; * * * (4) unless books and accounts are regularly kept by the insured in such manner that the amount of loss may be accurately determined therefrom by the company." Under a further provision, the insured was required, upon request of the insurance company to render every assistance in his power to facilitate the investigation and adjustment of any claim, and to produce for that purpose any and all books, papers and vouchers bearing in any way upon the claim made, and submitting himself to examination by any representative of the company.

In view of the fact that there is no dispute whatsoever with regard to the amount of the claim, and that the robbers were apprehended shortly after the robbery and admitted their crime, and that all property except the money, the amount of which is not disputed has been recovered, it is a bit difficult for us to understand what purpose any detailed set of books or accounts such as the defendant contends should have been kept by the plaintiff, would serve. There is testimony to the effect that accounts of the different funds pertaining to each separate business were kept, and in fact it is from such accounts that each sum of money robbed from these respective funds was ascertained. These accounts and records were not called for and produced in evidence, and we assume they were not for the very good reason that they must have been found to be correct and sufficient enough to "accurately determine the amount of the loss" which is not disputed.

We find less merit, if any, in this last defense than in any of the others and as they have all been rejected it follows that we conclude, as did the district judge, that the plaintiff's claim, which is supported by proper proof has to be allowed.

Judgment affirmed.