Argued March 23; affirmed April 18; rehearing denied
June 6, 1933

# SEECK MANUFACTURING CO. *v.*
# AMERICAN TRUST CO. ET AL.

(20 P. (2d) 1065, 22 P. (2d) 325)

*C. C. Hall,* of Portland (E. L. Wilson, of Portland, on the brief), for appellant J. O. Wilson.

*Frank T. Collier,* of Portland, for appellants A. J. Berry, receiver of American Trust Co., and J. D. O'Neil.

*Mark V. Weatherford,* of Albany, and *N. M. Newport,* of Lebanon (Weatherford & Wyatt, of Albany, on the brief), for respondent.

CAMPBELL, J. This is a suit to cancel a contract on the ground of fraud, and to restore to plaintiff certain personal property received by defendants by virtue of said contract, and for a judgment for certain sums of money collected by defendant for and on behalf of plaintiff under said contract.

From the complaint, it appears that the plaintiff was organized to own and manufacture and sell a mechanical device known as the Seeck Differential for use on motor vehicles.

Defendant, American Trust Company, is a corporation engaged in the business of selling stocks and bonds on commission or brokerage. Said defendant will hereinafter be referred to as defendant corporation. The

other defendants are alleged to be the directors, managing officers and personally in charge of the business of defendant corporation.

It is alleged that on January 10, 1931, the plaintiff, as party of the first part, entered into an agreement with defendant corporation, as party of the second part, whereby defendant corporation was given the exclusive right to sell the stock of the party of the first part. Among other provisions, this contract provided:

"And the said party of the second part agrees to sell the same in accordance with the permit granted and issued by the State of Oregon * * * and will comply with all of the laws of such state * * * relating to the sale of such stock therein.

"The said party of the first part agrees to procure all proper and required permits to sell the said stock in such state or states as it may be desired by both parties to sell the said stock in * * *. The said party of the second part agrees to begin work of selling the said stock in the State of Oregon as soon as a permit is issued by the State Corporation Department authorizing the sale thereof in said state and shall sell and have collected from the sale thereof and pay over to the said party of the first part the sum of $25,000 within ninety days from date of said permit * * *. The said party of the first part agrees to pay the said party of the second part for all its services for the selling of the said stock, the following sums and amounts: On the first 2,000 shares sold at the rate of $50 a share, commission in cash of 20 per cent on the amount collected * * *.

"It is further agreed that the said party of the second part shall make all collections for the said sale of stock, and when any money is paid in from the sale of said stock, the said party of the second part shall at once pay over to the said party of the first part, its share of the said money and the said party of the second part may retain as its own, the amount of cash commissions as herein provided to be paid and allowed * * *".

The above are the provisions of the contract material to a proper determination of this cause.

It is further alleged, in effect, that between January 10, 1931, and April 21, 1931, defendant corporation and its officers and managing agents sold a certain quantity of corporation stock of plaintiff on which it collected $8,611.70 in cash and received promissory notes from persons who contracted to purchase said stock, aggregating the sum of $17,488.30, and thereby earned and was entitled to retain $1,722.34 as its commission; that defendant corporation, with the knowledge and consent of its directors, the other defendants, appropriated, to its own use, all the money collected and refused to turn over to plaintiff the balance over and above the commission; that the officers of defendant corporation were parties to the wrongful use and appropriation of said funds; that defendants delivered to plaintiff the promissory notes above mentioned. Plaintiff further alleges that, at the time of the execution of said contract, defendants falsely represented to plaintiff the financial condition of defendant corporation; that it had a permit under Oregon laws to sell various corporation stock similar to the stock of plaintiff; that it had deposited $25,000 with the corporation commissioner of Oregon as security to those with whom it dealt; that it had a large clientele of investors in such stocks. Plaintiff relied upon those representations in entering into the contract.

To this complaint, defendant J. O. Wilson filed an answer which was, in effect, a general denial, and for a further and separate answer alleged that he was not a director in defendant corporation; that he never attended any directors' meetings and knew nothing about the contract alleged in the complaint; that he had resigned as a director on May 27, 1930.

The defendant corporation became insolvent and on the 13th day of July, 1931, A. J. Berry was appointed receiver by the circuit court of the state of Oregon for Multnomah county, and thereafter said receiver filed an answer to the complaint which in effect admits all the allegations in the complaint with the exception of those alleging fraud on the part of the company or its officers; for a further and separate answer and defense, alleged in effect, that the corporation was never authorized by its directors to enter into the contract alleged in the complaint. For a further separate answer and defense, it alleged that neither the defendant corporation nor the plaintiff had any permit to sell such stock in the state of Oregon at the time the contract was entered into and therefore the contract was illegal on the part of both defendant and plaintiff.

The defendant, J. D. O'Neil, filed an answer which was, in effect, a general denial, either directly or on information and belief, of the allegations in the complaint; for a further separate answer and defense alleged, in effect, that the corporation was never authorized by its board of directors to enter into the contract set up in plaintiff's complaint, and that said contract was illegal.

Thereafter, plaintiff filed its reply to the answer of the receiver and denied all the new matter set up in said answer; by way of separate reply to said answer alleged, in effect, that the said contract was entered into by authority of the board of directors and that said board of directors held itself out and represented to plaintiff that the defendant corporation had the necessary authority to enter into said contract, and that the defendant corporation had the necessary per-

mits to sell the stock and that said defendant corporation and board of directors should be estopped from now denying that the contract was not legally entered into.

In reply to the further and separate answer of defendant J. O. Wilson, plaintiff alleged:

"(1) That heretofore and prior to January 10, 1931, defendant J. O. Wilson was a stockholder of the defendant American Trust Company, and had been elected a director thereof; that at said time and on January 10, 1931, and prior thereto, the said J. O. Wilson was and is a man of financial standing and possesses a reputation for honesty and business integrity in the state of Oregon; that the said J. O. Wilson permitted the defendant American Trust Company to hold out to the public the fact that the said J. O. Wilson was a director of the defendant American Trust Company; that the defendant J. O. Wilson permitted the defendant American Trust Company to file reports which became, were and are public records in the Corporation Department with the Corporation Commissioner of the State of Oregon, wherein the said J. O. Wilson was named as a director of said corporation American Trust Company, all of which was done prior to January 10, 1931, and remained of record thereafter uncontradicted and as a fact; * * *"

It is further alleged that defendant J. O. Wilson knew that he had been elected a director of said defendant corporation, that he participated in the meetings of said board of directors of defendant corporation at and subsequent to the time the contract, alleged in the complaint, was executed; that in the first answer that was filed by all the parties defendant, it was admitted that defendant J. O. Wilson was a director of said corporation at the time of entering into the alleged contract and that the defendant J. O. Wilson had knowledge of all the transactions of defendant corpo-

ration in connection with the contract. That in the first answer filed by defendant J. O. Wilson, he alleged that he resigned as director of defendant corporation May 27, 1931.

In reply to the amended answer of defendant J. D. O'Neil, plaintiff denied all the new matter set up and by way of separate reply pleaded facts that would amount to an estoppel on the part of the defendant as to the new matter set up in his answer.

The cause was tried to the court, sitting in equity, who made findings and a decree in favor of plaintiff and against all defendants except defendant A. L. Brougher. He dismissed the case as to defendant Brougher. The defendants, against whom the decree was entered, appeal.

The theory upon which plaintiff presented its case to the court was that defendant, through fraudulent representations, induced plaintiff to enter into the contract, and that the directors and managing officers knew and participated in the wrongful and fraudulent conversion of the funds of plaintiff to the use and benefit of defendant corporation.

All the defendants contend that the contract was illegal and therefore void because, at the time it was executed, neither defendant corporation nor plaintiff had a permit from the corporation commissioner of the state of Oregon to sell this particular stock in this state.

The contract shows on its face that plaintiff was contracting for the sale of its stock after it should obtain a permit from the corporation commissioner to place its stock on the Oregon market. The plaintiff was the party of the first part to the contract and the defendant corporation the party of the second part. The plaintiff,

"* * * hereby grants unto the said party of the second part the right and license to sell in the State of Oregon or in any other state or states in which the said party of the First Part may secure the right and permit to sell said stock * * *".

The employment of an agent by a corporation to make sale of its stock is not prohibited by the statutes in this state, known as the Blue Sky law, if such agent is duly authorized and qualified or the corporation is led to believe that the agent is so authorized or qualified or if the agent will obtain the necessary authority under the laws of Oregon before entering on its employment, the contract not to become effective until the corporation should obtain the necessary permit from the corporation commissioner of the state for the sale of its stock. In the instant case, the plaintiff had no permit to sell its stock on January 31, 1931, the time of the execution of the contract with defendant corporation. It had had a permit which was suspended in October, 1930, and was reinstated on application of plaintiff January 22, 1931, twelve days after the execution of the contract. The plaintiff therefore complied with the law as well as with its contract. Oregon Code 1930, § 25-1302.

The evidence shows that when the contract was executed the defendant corporation, through its officers, the other defendants, represented to plaintiff that it (defendant corporation) was duly authorized and qualified under the Oregon law to act in the capacity of a broker for the sale of such stocks in the state of Oregon, and that plaintiff believed and relied on these representations. The representations, so made, were untrue. The defendant corporation had no permit at that time nor at any time thereafter, while it was engaged

in selling the stock of plaintiff, nor had it in any manner qualified itself to engage in that line of business. Thus, while so unlawfully engaged it sold the stock of plaintiff and collected the money therefor or took notes in the payment of such stock, in the amounts found by the circuit court. It appears that between the date of filing the complaint and the time of trial there was some money collected by defendant corporation, and some money collected by plaintiff on the notes turned over to it, all of which was taken into account by the circuit court in its findings and decree. It is admitted that the court's findings are correct as to the number of shares of stock sold and as to the amount of money collected and as to the promissory notes obtained. It is also admitted that none of the cash collected was turned over to plaintiff and that all of the promissory notes taken were turned over to plaintiff. Defendants contend that because defendant corporation acted unlawfully in making the sales that notwithstanding plaintiff was acting lawfully and was led to believe and did believe that defendant corporation's action in this respect was lawful, the plaintiff can not now compel delivery by defendant corporation of the fruits of said unlawful operations. It does not seem necessary to cite authorities to show the absurdity of this contention.

██ "We think that both reason and the weight of authority are to the effect that where a corporation has entered into a contract in excess of its granted powers, and has received the fruits or benefits of the contract, and an action is brought against it to enforce the contract, it is estopped to set up the defense that it had no power to make it". Citing many authorities. Roane v. Union Pac. Life Ins. Co., 67 Or. 264, at 279 (135 P. 892); Thompson Optical Institute v. Thompson, 119 Or. 252, (237 P. 965).

■. "Where an agreement is capable of being performed in a legal manner, the mere fact that one of the parties to the agreement intended to perform it in an illegal manner, will not preclude its inforcement. The illegal attempt that defeats a contract must be the common intent of both parties. If the purpose of either in making it, is lawful, and if he supposes the other's so to be, and contracts upon that supposition, his right to recover upon the contract after performance or tendering performance, is clear". 6 R. C. L. 695, § 101.

■ ■ The complaint avers that defendant corporation and its directors and managing officers made the false representations therein alleged, with knowledge of their falsity, and that plaintiff believed and relied thereon. There is evidence to support this averment. Under such facts and circumstances the directors and managing officers, as well as the corporation, are liable for any loss suffered by plaintiff by reason of such false representations. Oregon Code 1930, § 25-219.

"The officers of a corporation are personally liable for fraudulent representations as to the financial condition of the corporation, to third persons who in reliance on such representations deal with the corporation and incur losses by reason of its insolvent condition". 7 R. C. L. 485, § 466.

■ 3. Defendant J. O. Wilson contends that he was not a director of the corporation at the time the contract under consideration was entered into, nor at any time thereafter.

It appears that on January 22, 1930, defendant J. O. Wilson wrote a letter to the corporation commissioner of the state of Oregon in which he said:

"As Vice-president and a director of the American Trust Company I am much interested in its future and financial welfare—it is the writer's intention to keep in constant touch with the company's business affairs and to help place and keep it on a sound foundation".

The answer filed on behalf of all defendants, admitted that J. O. Wilson was a director. The first answer filed by J. O. Wilson admitted that he was a director, but that he resigned in May, 1931. The defendant corporation's counsel admits that no record or minutes of the directors' meetings of the corporation were kept, yet it was doing business, and those alleged directors were attending meetings at which business was transacted. Defendant Thomas Kerrigan, one of the admitted directors, when asked whom he saw at the directors' meetings, answered, "I have been present myself, Mr. Moore, Mr. Gifford, Mr. Wilson, Mr. O'Neil". This, he testified, was at a meeting in May, 1931, when they were discussing, among other affairs of the defendant corporation, the contract in the instant case, and that those present took part in the discussion and voted on the questions determined. Then there is the testimony of other witnesses that Mr. Wilson was present at other meetings and took part in the deliberations long after May 30, 1930. The record does not disclose whether Mr. Wilson was present at the trial, but we have a right to assume that he was. In any event, his attorney was present and taking an active part. Yet, Mr. Wilson was not called to the stand to deny any statement made connecting him with the office of director of the company and knowledge of the application defendant corporation was making with the funds of plaintiff.

The testimony and circumstances are practically to the same effect so far as J. D. O'Neil is concerned. The evidence and circumstances, taken as a whole, sufficiently establish the fact that these men were at least active as directors, and that all of the directors had knowledge of and participated in the wrongful application of the funds of plaintiff collected by defendant

corporation. The evidence also establishes that false representations were made by defendants, which were believed and relied upon and were the inducing cause of plaintiff entering into the contract. The personal property referred to in the complaint consists of certain samples and agent's kits, the property of plaintiff and of no value to defendants and should be turned over to plaintiffs.

The decree of the circuit court will be affirmed. Neither party to recover costs in this court.

It is so ordered.

RAND, C. J., and BEAN, J., concur. BAILEY, J., concurs in the result.

––––––

Petition for rehearing denied June 6, 1933

ON PETITION FOR REHEARING
(22 P. (2d) 325)

CAMPBELL, J. Counsel for defendant, J. O. Wilson, and counsel for defendant, J. D. O'Neil, have filed very earnest and courteous briefs in support of their motion for a rehearing, in which they claim that we are in error in holding that these defendants were directors of the defendant American Trust Company, at the time said defendant corporation entered into the contract with plaintiff, or any time thereafter; that even if we should hold that these defendants were directors, the evidence does not show that either of them had actual knowledge of, or participated in the fraudulent representations.

We have held in the original opinion that there is sufficient evidence, in the absence of either of these

defendants' testimony to the contrary, to show that these defendants were at least acting as directors of the defendant corporation. They must have had knowledge that defendant corporation obtained possession of certain moneys belonging to plaintiff and that it was acting as plaintiff's trustee so far as these funds were concerned. It owed the duty to safeguard and account to plaintiff for these funds.

"It is true that no directors' meetings were shown ever to have been held, and no evidence was introduced showing that actual knowledge was brought home to director R. E. Hansard of the condition of the affairs of the company, or its conduct with respect to the money of plaintiff and his assignors. On the other hand this appellant did not testify or offer any proof showing that she had no such knowledge, or that she could not have obtained it by the exercise of ordinary diligence as a director of the company". Vujacich v. Southern Commercial Company, 21 Cal. App. 439 (132 P. 80).

We see no reason to depart from our original opinion. The rehearing will be denied. It is so ordered.