# Woods & Co. *v.* Armstrong.

## *Action on Promissory Note.*

1. *Contract; when void.*—A contract founded on an act which a statute prohibits under a penalty, is void, although the statute does not expressly so provide.

2. *Same; what not validated by.*—The subsequent repeal of the statute, without any saving clause as to penalties already incurred, will not validate a contract void under the law in existence when the contract was made.

3. "*Act to protect planters from imposition,*" *&c., construed.*—The statute to protect planters from imposition in the sale of fertilizers, approved March 8th, 1871, exacts an actual inspection, stamping and certifying by a proper officer, before a sale of guano can be made. The fact that the owner, before sale, procured the sub-inspector to visit the warehouse where the guano was deposited, gave him samples, and urged him to inspect, stamp, and certify the guano according to law, will not relieve a sale from the operation of the statute, if no inspection be in fact made.

APPEAL from Circuit Court of Henry.

Tried before Hon. J. McCaleb Wiley.

Appellants, in the spring of 1873, sold the appellee and various other persons, a commercial fertilizer, known as the "Soluble Pacific Guano," for which the purchasers executed notes, reciting that consideration. These notes not having been paid, appellants brought seventeen suits against the purchasers in the circuit court, where, by agreement of counsel, the cases were tried together, all the cases going off below on the judgment rendered in the present case, which it was agreed should be a test case in this court, the others to abide the event of this appeal.

The case was tried on issue joined on pleas of *non assumpsit* and failure of consideration.

It was agreed that "none of the bags of Soluble Pacific Guano sold to the defendant were branded or stamped with an inspector's brand in the State of Alabama," and that Dr. James Gillespie, "sole inspector for Henry county, was called upon and requested by plaintiffs' agents to inspect and brand all the guano they received for sale in the year 1873; that said Gillespie went to Columbia and Gordon to inspect said guano, and took a sample from each bulk, and was paid his legal fees for such inspection, but said Gillespie, as inspector, failed or refused to inspect or brand the said sacks of guano. Gillespie went to Columbia and Gordon and took a sample but one time."

There was much testimony introduced to show that the plaintiffs had warranted the guano, and that it was worthless, but as the case did not go off on that point, no further reference need be made to it.

The court charged the jury, among other things, that the "Act to protect planters of this State from imposition in the sale of fertilizers," was a constitutional law, and unless every sack, bag or package of said guano was inspected, analyzed and stamped, or branded, with an inspector's brand or stamp in this State, before the same was offered for sale and sold, that the sales were in violation of the law, and plaintiffs could not recover."

Exception was reserved to this charge, and it is now assigned as error.

OATES & BRO., for appellant.—The appellee here is *particeps criminis* in the illegal act of sale. He asserts only rights which the State allows him to assert for its good, and not out of regard for him. If the State is estopped, he is also. The State, whose authority is sought to be invoked to annul this sale, is itself estopped. Its officer failed to do

his duty. Appellants did theirs. Can it be that the State will declare a forfeiture because a law was not complied with, when it is its fault that the law was not carried out—when the act of its agent made it impossible for appellants to comply with the law, although they vainly endeavored to do so? The State can not take advantage of its own wrong.—*Brent v. State*, 43 Ala.; *Boyd & Jackson v. State*, 46 Ala.

The inspection act does not declare sales void, but simply imposes a penalty on the seller.—*Harris v. Runnels*, 12 Howard, 79. The repeal of the statute requiring the inspection, without any saving clause, takes away all offenses growing out of that act.—46 Ala. 603; 4 Ala. 487; 6 Cranch, 329; 2 Peters, 380; 49 Barbour, 524; *Brooklyn Life Ins. Co. v. Bledsoe*, 52 Ala. 538.

F. M. WOOD, for appellee.—The contract was clearly illegal and void. Until actual inspection of the guano, it was a violation of law to sell it. The plaintiff could have compelled an inspection. The State, in general, is not liable for the misfeasance of its officers, or an insurer against loss by them. The sale being void, the repeal of the statute then in force will not give it life.—See, as to illegality of sale, 2 Benj. on Sales, 430-3; 1 Brick. Dig. 377.

STONE, J.—In *Shippey v. Eastwood*, 9 Ala. 200, this court said: "It has been repeatedly determined that a penalty inflicted by statute upon an offense, implies a prohibition, and a contract relating to it is void, even where it is not expressly declared by the statute that the contract shall be void." Many authorities are cited in support of this proposition.

In *Saltmarsh v. Tuthill*, 13 Ala. 406, this language is quoted with approbation.

In *O'Donnell v. Sweeney*, 5 Ala. 468, this court, after stating the principle as above, added: "It would indeed be a strange anomaly if a contract, made in violation of a statute, and prohibited by a penalty, could be enforced in the courts of the same country whose laws are thus trampled on and set at defiance."

In *Milton v. Haden*, 32 Ala. 36, this court said "that a contract founded on an act which the law prohibits under a penalty, is void." To the same effect is *Dodson v. Harris*, 10 Ala. 566; *Gunter v. Lecky*, 30 Ala. 591. In the case last cited, and in *McGehee v. Lindsay*, 6 Ala. 16, this court went farther and said: "It is not necessary that a statute should impose a penalty for doing or omitting to do something, in order to make a contract void which is opposed to its opera-

tion." See, also, *Black & Manning v. Oliver*, 1 Ala. 449; *Walker v. Gregory*, 36 Ala. 180.

The rule above declared is not only founded in the soundest principles of morality and public policy, but its enforcement is necessary to maintain the supremacy of the laws and the dignity of the State.

Each of the suits in the present record is founded on a note, which expresses as its consideration "Soluble Pacific Guano," sold to the defendant. Soluble Pacific Guano is a fertilizer, and was sold as such during the early months of 1873; the dates of the several notes declared on. It is one of the admitted facts in this record that the Soluble Pacific Guano sold to the several defendants, whose cases are presented in this record, was never inspected in this State, or by its inspector, or any sub-inspector, under the statute "To protect the planters of this State from imposition in the sale of fertilizers," approved March 8, 1871. That statute declares "that any person who shall sell, or offer for sale, within this State, any fertilizer manufactured in or imported into this State, which has not been inspected, stamped, and certified to, . . . . . . shall be guilty of a misdemeanor, and, on conviction thereof, in any court having jurisdiction, shall be fined not more than one thousand dollars."

On the admitted facts in this record, this case is brought directly within the principles declared above, and there can be no recovery in these suits, unless the appellant has shown a sufficient excuse for not having the fertilizer inspected. He contends he did all he could to comply with the law, in this, that he procured the sub-inspector for his county to visit his warehouse, and that such sub-inspector examined the packages, took samples, and promised to perform his part of the service. That he subsequently called the attention of the sub-inspector to the subject, and urged him to act, but such sub-inspector pleaded other engagements, and informed the seller he might proceed to sell, and it would all be right.

Another argument urged, why we should hold this case not within the rule above declared, is, that on the 24th December, 1874, the statute requiring inspection of fertilizers was repealed.—Pamp. Acts, 244. The precise point made is, that inasmuch as the illegality of the contract consists in the fact that it was made in violation of a statute imposing a penalty for its breach, the repeal of that statute, although effected since the trial and judgment in the court below, relieves the contract of all illegal taint, and neutralizes the defense then successfully made. In point of fact, these several suits were tried and determined at the spring term of the

circuit court, 1874, before the enactment of the repealing statute.

In answer to the argument first above stated, it is obvious that the law requiring the inspection of fertilizers, was enacted to protect planters from imposition—imposition in the sale to them of fertilizers, without the guaranty to them which inspection affords of the quality of the article they are purchasing. Without such guaranty, the planter, usually unskilled in agricultural chemistry, may be greatly injured by the quality of the article he is induced to purchase. For such injury, the law can not afford him complete indemnity. This statute was 'passed in the interest of a class which may justly be styled the *causa causans* of all wealth, if not of all other industries. Most civilized nations have made it a part of their policy to extend a fostering care over agricultural pursuits. Such was the policy which dictated this statute, and as such we must measure the consequences which result from its disregard. Whether the provisions of this statute were wise or not, it is not our province to determine. While in existence, it was a binding rule of action, and its subsequent repeal did not impair its binding force while it remained on the statute book. It expressed a legislative policy which we have no right to disregard. We have been referred to no authorities in support of either of the above propositions, and we have found none. We think the excuse offered, why the fertilizer was not inspected, is insufficient. The statute contains no such exception; and the seller, before making sale, or offering for sale, should have taken steps to secure or coerce inspection, stamp and certificate. While we have no foundation for imputing any wish to evade or violate the law in this case, we think the course pursued by the seller and sub-inspector might lead to collusions very detrimental to the class the statute was designed to protect.

We are equally convinced that the argument second above urged is unsound. The legality of the contract must be tested and determined by the law as it stood when the contract was made. The repeal of the statute in 1874, can not retroact so as to make valid a contract made in 1873, which was at that time illegal, under a statute then of force.—*Mays v. Williams*, 27 Ala. 267. True, in this case, that in the repealing statute of 1874, there is no saving clause as to penalties previously incurred. We apprehend, however, that section 4151 of the Revised Code would have prevented the result contended for, even if the case had been one of prosecution for the offense committed. The principle, however,

even without our saving statute, has no application to the question we are considering.

What we have said above is decisive of these cases in any event, and we deem it unnecessary to consider the other questions raised by the assignments of error.

Judgment of the circuit court affirmed.