Argued October 15; affirmed November 13, 1940

# NORTHWEST AMUSEMENT CO., Inc., *v.* AETNA CASUALTY & SURETY CO.

(107 P. (2d) 110)

*Stephen W. Matthieu,* of Portland (John F. Logan, of Portland, on the brief), for appellant.

*Frank S. Senn,* of Portland (Senn & Recken, of Portland, on the brief), for respondent.

KELLY, J.   The defendant issued a mercantile burglary policy of insurance for direct loss by burglary of merchandise usual to assured's business, being that of "Premium Store" at 106 Northeast Oregon street, for a period of twelve months beginning at noon on the 19th day of November, 1935, and ending at noon on the 19th day of November, 1936. The name appearing in the application for said policy, and which is incorporated in said policy as that of the assured is, "Ben Levin dba Northwest Amusement Co."; and it is stated in said application and policy that the assured is an individual.

It is alleged in plaintiff's second amended complaint, and testimony was introduced tending to prove that on or about the 28th day of May, 1936, some person or persons unknown to plaintiff broke into plaintiff's premises and stole therefrom twenty-seven slot machines.

It is alleged in defendant's answer, and the evidence discloses that, at the time of the execution of said policy and at the time of the alleged theft, said slot machines were gambling devices.

In plaintiff's second amended complaint, which is the last amended complaint filed by plaintiff herein, there is no allegation of any fact whereby or because of which defendant ought not to be permitted to allege and prove that said policy was not issued to plaintiff corporation but only to Ben Levin, an individual, or that the insured was not the owner of the property covered by the policy.

In plaintiff's reply to defendant's answer, it is alleged:

"That any inaccuracy in describing the plaintiff as the insured was due to the mistake and inaccuracy of the defendant and its agents. That said policy was ordered solely on behalf of the plaintiff, and the plaintiff paid the premium thereon. That payment of such premium was made with the knowledge and consent of the defendant and accepted as premium paid by the plaintiff."

"That the Ben Levin described in defendant's answer was at all times the president of the plaintiff, acting solely on its behalf and as its agent. That prior to the issuance of said policy, the specific property upon which plaintiff's claim is based was pointed out to the defendant as and for the property of plaintiff and was part of the property which defendant agreed to insure under its aforesaid policy."

At the time of the issuance of said policy of insurance, there was, and at all times since there has been, in effect an ordinance of the city of Portland, providing, among other things, that—

"It shall be unlawful to set up, keep or have in possession or to manufacture, sell or distribute within the City of Portland any nickle-in-the-slot or other

money slot machine or similar device adapted, devised or designed for the purpose of playing any game of chance for money or property, and it shall be unlawful for any person to have in possession any operating part capable of being assembled or used in any such machine or device." Section 13-1, Ordinance No. 32928, City of Portland.

Among other things, said ordinance also provides that it shall be the duty of the chief of police to seize any such money, slot machine or operating part found in the possession of any person in the city of Portland in violation of the above quoted section of said ordinance; and that whenever it shall appear to the municipal court that such machine or devices so seized were used or kept within the city of Portland in violation of said ordinance, the municipal court, in addition to the penalties prescribed by this ordinance, may adjudge forfeiture thereof, and shall order the chief of police to destroy the same. Said ordinance also provides that the chief of police shall make a return to the court showing that he has complied with such order.

Defendant urges that the order of involuntary nonsuit should be affirmed on the ground that as Ben Levin, an individual, is the assured, the action is not maintainable by plaintiff, a corporation; on the further ground that because possession of slot machines is forbidden by ordinance, their loss by burglary cannot be made the basis of recovery upon the burglary policy of insurance herein; and on the further ground that, being gambling devices, the possession of which is forbidden, the slot machines were valueless.

■ The first reason thus given by defendant is supported by a former decision of this court. In that case, an action was brought by Mary I. Mercer on a policy of fire insurance issued in favor of A. G. Mercer. The

facts relied upon as estoppel by waiver were pleaded in the reply. It was there held that, inasumch as the complaint failed to allege facts by reason of which defendant should not be permitted to urge that the insured A. G. Mercer did not own the insured property; and that hence the policy was void because of the provision therein to the effect that such policy would be void if the interest of the insured be other than sole and unconditional ownership of the property covered. *Mercer v. Germania Insurance Co.*, 88 Or. 410, 171 P. 412. The doctrine of that case is controlling here.

■ The ordinance, above mentioned, has been upheld by this court, *Enloe v. Lawson*, 146 Or. 621, 31 P. (2d) 171.

"The parties to a contract of insurance are presumed to have knowledge of valid city ordinances or local laws, and they become an integral part of policies upon property within the limits to which they apply." Vol. 1, Couch's Cyclopedia of Insurance Law, p. 296, § 149.

Plaintiff's possession of the slot machines was a continuing violation of the ordinance in question. The contract of insurance had for its object the indemnification of plaintiff from damage by reason of the loss of such possession by burglary. We think that such a contract should not be enforced by the court.

Where an insurance company issues a policy of insurance on a building, which is wholly devoted to the illegal sale of liquor, such policy is invalid. Vol. 2, Restatement of the Law, Contracts, pp. 1108, 1109, § 597, Illustration 1. The possession of slot machines in Portland is illegal in its entirety.

■ The rule of public policy, which prevents a recovery in court upon such an agreement, is not based upon the impropriety of compelling the defendant to

comply with his contract. That in itself would generally be a desirable thing. Relief is denied, because plaintiff is a wrongdoer.

"Courts do not wish to aid a man who founds his cause of action upon his own immoral or illegal act. * * * The court's refusal is not for the sake of the defendant, but because it will not aid such a plaintiff." Ibid, p. 1110.

The distinction between the case at bar and *Brown v. New Jersey Insurance Co.*, 140 Or. 547, 14 P. (2d) 272, is that in the instant case the possession of the slot machines was prohibited by an ordinance which, under the authority above cited, is an integral part of the insurance policy, while in *Brown v. New Jersey Insurance Co.*, supra, the possession of the insured goods was not prohibited by any law.

In the case of *Insurance Company of North America v. Evans*, 64 Kan. 770, 68 P. 623, it is stated that under the Kansas constitution and statutes, liquors may be lawfully kept and for some purposes they may be legally sold. The holding in that case, that illegal sales of some of the liquor, which comprised part of insured property, did not invalidate the policy of insurance, is not to the effect that a contract of burglary insurance is enforcible when the possession of the insured property is prohibited by law.

The same distinction is observed in *Erb v. German-American Insurance Co.*, 98 Iowa 606, 67 N. W. 583, 40 L. R. A. 845. It is there stated:

"In Carrigan v. Insurance Co., 53 Vt. 418, the Massachusetts cases and the Michigan cases are noticed, and the case quotes much of the language we have quoted from them. The policy in that case covered a stock in trade consisting of groceries, provisions, drugs: * * * including wines and liquors. In the case at:

bar, as in that one, liquors are included in the terms of the policy. In that case it is said: 'If the purpose of the contract in question had been to protect the assured in the sale of intoxicating liquors, it would have been null; but the greater part of the property insured consisted of goods insurance upon which was subject to no objection. The contract was legal on its face, nothing appearing to show that the wines and liquors were intended for illegal sale; and it is a fact, not needing proof, that in compounding medicines, liquors, especially wines and alcohol, are of daily use, and for that purpose their possession and use by druggists are legitimate * * *.' We think the rule of the Michigan and Vermont cases announces the correct doctrine."

*Boardman & Another v. The Merrimack Mutual Fire Ins. Co.*, 8 Cushing (Mass.) 583, deals with an insurance policy upon a building. The contention was made that, because a lottery was conducted therein, the policy was not enforcible. We quote from the opinion: "* * * the law, which forbids the setting up or drawing of any lottery, and which renders it penal for any person who shall knowingly permit the drawing of any lottery in any house, shop or building owned or occupied by him, does not subject the building to any forfeiture."

In the case at bar, the property upon which the policy was issued, was subject to confiscation and destruction.

*Conithan v. Royal Insurance Co.*, 91 Miss. 386, 45 So. 361, 18 L. R. A. (N. S.) 214, 124 Am. St. Rep. 701, 15 Ann. Cas. 539, upheld a recovery upon a policy of insurance covering furniture in a bawdy house. While not so stated, it is evident that the possession of such furniture was not prohibited.

In *Walden and Walden v. The Phoenix Insurance Company of New York*, 5 Johns (N. Y.) 310, 4 Am. Dec. 359, the validity of a policy insuring a ship was

challenged on the ground, among others, that the voyage was begun with a knowledge of its being illegal and prohibited on acount of an embargo. We quote from the opinion:

"These objections, I think, cannot prevail. The policy was effected on the 18th of December, 1807, on the vessel, at and from New-York to Havannah. The risk had accordingly commenced before the passing of the act, and the defendants' right to the premium had become fixed. The rumor, on the morning the ship sailed, of an embargo having taken place, as stated by the pilot, was too vague and uncertain to be obligatory upon the plaintiffs, so as to subject them to the consequences of an intentional violation of the embargo, which would have been a criminal act. But another conclusive answer to this objection is, that the plaintiffs are not chargeable with any information which the pilot might have on this subject. He was not such an agent as to make his acts the acts of the assured. He was only employed for the specific purpose of conducting the vessel out to sea, and had no control or direction as to the time of sailing. This belonged to the master or owners; and there is no evidence of any knowledge of the embargo being brought home to either of them."

In the case at bar, the ordinance prohibiting possession of slot machines was effective before the policy in suit was issued.

Besides citing the six cases last above analyzed, plaintiff cites *Ocean Insurance Co. v. Polleys*, 13 Peters 157, 10 L. Ed. 105, and *Armstrong v. Toler*, 11 Wheat. 258, 6 L. Ed. 468. *Ocean Insurance Co. v. Polleys*, supra, was dismissed for want of jurisdiction. The discussion of the law of the case contains a reference to *Armstrong v. Toler*, supra. In *Armstrong v. Toler*, it is said:

"* * * no principle is better settled than that no action can be maintained on a contract, the considera-

tion of which is either wicked in itself, or prohibited by law."

In the case at bar, the consideration of the burglary insurance contract was the indemnification of plaintiff for damages sustained by reason of the loss of possession of property, the possession of which was prohibited by law.

*Niagara Insurance Co. v. DeGraff*, 12 Mich. 124, is also cited by plaintiff. In a stock of groceries, which was the property insured, there were a few bottles of spirituous liquors and a barrel of alcohol. It was there claimed that if liquors were included in a policy it would be insuring an illegal traffic. We quote from the opinion:

"Our statute does not in any way destroy or affect the right of property in spirituous liquors, or prevent title being transmitted, but renders sales unprofitable by preventing the vendor from availing himself of the ordinary advantages of a sale, and also affixes certain penalties. Hibbard v. People, 4 Mich. 125; Bagg v. Jerome, 7 Mich. 145. If the owner sees fit to retain his property without selling it, or to transmit it into another state or country, he can do so."

As stated, in the case at bar possession of the property in suit was prohibited.

In *Mechanics Insurance Co. v. C. A. Hoover Distilling Co.*, 182 Fed. 590, 31 L. R. A. (N. S.) 873, it appears that fire insurance policies upon whiskey stored in a bonded warehouse in the state of Iowa were held to be valid contracts by the United States Circuit Court of Appeals of the Eighth Circuit. In the opinion of that court, it is stated:

"Notwithstanding the prohibition policy of the state of Iowa, its laws authorize the sale and storage for sale of intoxicating liquors upon the payment of specified taxes, upon certain conditions with which parties

often comply, so that whiskey may be lawfully kept, stored and sold in that state.''

In its further discussion, the court assumed that, because the general policy of the state prohibited its manufacture or sale, its possession in the absence of proof of a lawful intent—and there was no such proof in that case—was evidence of an illegal purpose and rendered its possession unlawful; but the court held that insurance of the whiskey against fire was neither illegal nor a violation of the prohibition policy of the state. The court cite the case of *Erb v. Fidelity Insurance Co.*, 99 Iowa 727, 733, 69 N. W. 261, sustaining a contract for such insurance; and hold that the statute of Iowa [Sec. 2423, Code of Iowa] forbidding the maintenance of any action for the recovery of any intoxicating liquor or its value, except where persons owning it or possessing it with lawful intent have been illegally deprived of it, has no application to and does not affect suits and proceedings in the federal courts.

This statement in the opinion distinguishes the case of *Mechanics Insurance Co. v. C. A. Hoover Distilling Co.*, supra, from the instant case, namely:

''The policies of insurance were not prohibited by the statutes or contrary to the public policy of the state of Iowa, and its laws were ineffective to forbid the maintenance of actions upon them in the national courts, and the objections to the judgments in issue on these grounds cannot be sustained.''

As stated, the case at bar is based upon a policy of burglary insurance indemnifying against loss of possession of property, the right to the possession of which did not and could not rest in one to whom the policy was issued or anyone else.

The case of *Anheuser-Busch Brewing Ass'n v. Mason*, 44 Minn. 318, 46 N. W. 558, 9 L. R. A. 506, 20 Am. St. Rep. 580, is one based upon the sales of bottled

beer to the keeper of a brothel. The final paragraph of the opinion in that case is as follows:

"The agent who made the sales, upon whose testimony the defendant saw fit to rest her case, knew that she was engaged in the unlawful business of keeping a house of ill fame, and admits also that he supposed the beer would be used or sold in her place of business. Nothing further was shown which connected the plaintiff or its agent with any violation of the law. The burden was upon the defendant to show that an enforcement of the contract would be in violation of the settled policy of the state, or injurious to the morals of its people, and no court should declare a contract illegal on doubtful or uncertain grounds. And it may be difficult to distinguish between the cases in which the vendor, with knowledge of the vendee's unlawful purpose, does not become a confederate, and those wherein he aids and assists to an extent sufficient to vitiate the sale; but this difficulty is not apparent in the case at bar."

In the instant case the ordinance, which, as stated, has been held by this court to be valid, prohibited the possession of slot machines; the policy in suit purported to insure against the loss of such possession by burglary. Construing the policy as if the terms of the ordinance were written therein, in effect such policy undertook to insure against the loss of a nonexistent right, namely the right of possession of slot machines in the city of Portland.

Case No. 1 of *United Security Life Insurance Co. v. Brown*, 270 Pa. St. 264, 113 Atl. 443, which is a companion case to the one cited by plaintiff and bearing the same title, reported in 270 Pa. St. 273, 113 Atl., 447, held an insurance transaction to be a wagering one and therefore not enforcible. There it was held that where the written agreement clearly showed the transaction to be one condemned by public policy, the

burden was upon the plaintiff to prove other facts, if any, which would render the contract free from such objection. These two Pennsylvania cases must be considered together and when so understood, we think they support the views expressed herein.

■ The doctrine of *Seeck Mfg. Co. v. American Trust Co.*, 143 Or. 314, 20 P. (2d) 1065, cited by plaintiff, is not at variance with these views. The pertinent rule to be taken from that case is:

"Where an agreement is capable of being performed in a legal manner, the mere fact that one of the parties to the agreement intended to perform it in an illegal manner will not preclude its enforcement. The illegal intent that defeats a contract must be the common intent of both parties." 6 R. C. L. 695, § 101.

In the case at bar, both parties to the policy of burglary insurance were seeking to protect the illegal possession of slot machines against burglary.

■ Among others, the following four tests have been applied by the courts in determining whether or not recovery should be permitted upon contracts challenged as illegal: (16 B. U. L. R. 962, 966.)

(1) Did they aid or tend to aid a result possible of attainment only by an unlawful act, or one contrary to public policy? *Ingersoll v. Coal Creek Coal Co.*, 117 Tenn. 263, 98 S. W. 178, 9 L. R. A. (N. S.) 282, 119 Am. St. Rep. 1003, 10 Ann. Cas. 829. (2) Could the plaintiff establish his case without reference to or reliance upon an illegal act or transaction? *McMullen v. Hoffman*, 174 U. S. 639, 43 L. Ed. 117, 19 Sup. Ct. Rep. 839. (3) Is the contract a new contract based upon separate legal consideration? *Armstrong v. Toler*, supra; *Holt v. O'Brien*, 15 Gray (Mass.) 311. (4) What is the evil apprehended if the contract be enforced? *Sage v. Hampe*, 235 U. S. 99, 59 L. Ed. 47, 35 Sup. Ct. Rep. 94.

■ Indubitably, the first three of these tests disclose that the contract of insurance herein is not enforcible. (1) It tends to aid in the unlawful possession of slot machines. (2) The plaintiff could not establish his case without proving his illegal possession thereof. (3) The consideration for the indemnity insurance was plaintiff's possession in Portland of the slot machines; if there had been no such possession, there would have been no insurance indemnifying plaintiff against its loss by burglary.

The evil to be apprehended, if such insurance policies are held to be valid and enforcible, is such as invariably attends disregard for and violation of law, namely, a weakening of the only real safeguard of the rights and privileges of citizenship, which consists of respect for and enforcement of law; hence, an application of the fourth of the above tests supports the conclusion to which we have arrived.

We think it unnecessary to pass upon the question whether slot machines possess any value in a city where their possession is forbidden by ordinance notwithstanding the statement by the Court of Appeals of New York with reference to whiskey missing from a warehouse where it had been stored while the National Prohibition Act [Act Oct. 28, 1919, c. 85, Title 1, §§ 1-7, 41 Stat. 305; U. S. Comp. St. (1916) Vol. 4, 1923 Supp., p. 3559, §§ 10138 1/4a et seq.] was in effect; that such whiskey had no pecuniary value to plaintiff; "that it was as worthless to plaintiff as a gem in the ocean." *Gonch v. Republic Storage Co., Inc.*, 245 N. Y. 272, 157 N. E. 136.

No good purpose can be served by a further discussion of the questions here decided.

The judgment of the circuit court is affirmed.

BEAN and BAILEY, JJ., not sitting.