51 So.2d 498

BANKERS & SHIPPERS INS. CO. OF
NEW YORK v. BLACKWELL.

2 Div. 281.

Supreme Court of Alabama.

Feb. 8, 1951.

Rehearing Denied March 29, 1951.

F. W. Davies and Davies & Williams, all of Birmingham, for appellant.

Edgar P. Russell, Jr., and Wilkinson & Wilkinson, all of Selma, for appellee.

FOSTER, Justice.

This is a suit by appellee against appellant on a transportation policy of insur-

ance as later amended by parol agreement. It was tried on counts 3 and 4. Demurrer to those counts was each overruled. The first contention made by appellant is their sufficiency against the demurrer.

Count 3 alleged the issuance on August 25, 1948 of a transportation policy by appellant to appellee in the amount of $8,000.00 to cover the lawful goods and merchandise belonging to appellee. That during the first week in November, 1948, said contract of insurance was amended by parol agreement, by which the coverage was amended so as to include lawnmowers hauled by plaintiff for hire, while in transit, against loss to said goods by overturning, the consideration being the reliance by plaintiff on such amended policy and the noncancellation of it by defendant and the nonpayment by defendant of the unearned portion of the premium.

■ The first contention as to the demurrer to this count is that it does not allege a sufficient consideration for the added feature to it. The necessity for such consideration is of course admitted. But it is claimed by appellee that the count is sufficient in that respect, measured by the rule declared by this Court in Hartford Fire Ins. Co. v. Aaron, 226 Ala. 430, 147 So. 628, 630. We there referred to the principle that "if the contract is bilateral in its advantages and obligations, it may be modified by mutual agreement before a breach without any other consideration than the mutual assent of the parties, to its continued binding effect upon both of them." Cowin v. Salmon, 244 Ala. 285, 13 So.2d 190; Commercial Credit Co. v. Perkins, 236 Ala. 616, 184 So. 178; Spencer v. Richardson, 234 Ala. 323, 175 So. 278.

■ It is next insisted that the count does not show an insurable interest in plaintiff as to the lawnmowers. The complaint alleges that the coverage includes lawnmowers hauled by plaintiff for hire while in transit. The rule is that plaintiff, while carrying the goods for hire, creates by law a certain responsibility to the owner for their safe delivery, either as a carrier or bailee, and therefore that he has an insurable interest to the extent of the full value of the property for his own benefit and that of the owners interested. Snow v. Carr, 61 Ala. 363, 371; 44 Corpus Juris Secundum, Insurance, p. 919, § 217(e); 29 Am.Jur. 295, section 324; Phoenix Ins. Co. v. Erie & Western Transp. Co., 117 U.S. 312, 6 S.Ct. 750, 29 L.Ed. 873, 876; Goldstein v. Harris, 24 Ala.App. 3, 130 So. 313.

This principle is not affected by section 126, Title 7, Code, requiring the beneficial owner to sue on certain claims. The carrier or bailee is here a beneficial owner and sues by that right. This admits that after a loss the claim is within the statute. Capital City Ins. Co. v. Jones, 128 Ala. 361, 30 So. 674; Life & Casualty Ins. Co. v. Crow, 231 Ala. 144, 164 So. 83; Goldstein v. Harris, supra.

■ Appellant also insists the allegations are not sufficient to show such a verbal contract of insurance as is necessary to be valid in alleging the terms of it. But the complaint alleges that the coverage of the outstanding policy was extended by agreement to include lawnmowers hauled by plaintiff for hire while in transit against loss to said goods by overturning. The policy, to which this was added, contains with the addition all that is necessary as to detail and complies with the requirements of Commercial Fire Ins. Co. v. Morris, 105 Ala. 506, 18 So. 34.

The next contention made by appellant is based on the sufficiency of pleas 5, 6, 10, 11, 12, 14, 15, 16, 17, 22, 23 and 24 against the demurrer which was sustained to them. Those pleas all set up the terms of the usual and customary policy issued by appellant and other insurance carriers to cover the risk, which it is alleged appellant assumed by virtue of the verbal coverage. The argument is based on the principle that a verbal contract of insurance is governed by the terms and provisions of the usual and customary policy issued to cover such risks; that such verbal contracts can only be thus sustained by then providing the details intended to be included. Hartford Fire Ins. Co. v. King, 106 Ala. 519, 17 So. 707; Cherokee Life Ins. Co. v. Brannum, 203 Ala. 145, 82 So. 175.

■ But such is not the nature of the verbal matter added to the written agree-

ment. It does not purport to stipulate for a contract whose terms are not expressly agreed upon in detail, but it adds a coverage to an outstanding contract whose terms are fully set forth in the policy to which the new feature is added. That is sufficient to comply with the rule. Commercial Fire Ins. Co. v. Morris, supra; Home Ins. Co. v. Adler, 71 Ala. 516.

■ The same legal status applies to the rulings of the court in sustaining objection to the testimony offered by appellant to prove what were the terms and provisions of the usual policy issued to cover risks on cargoes carried by carriers embracing the risk included in the amendment added to the policy. For the reason stated, supra, there was no error in those rulings.

Appellant also assigns error in respect to the judgment of the court sustaining plaintiff's demurrer to pleas 8, 21 and 25. We adopt in respect to them the following statement in appellant's brief:

"All of said pleas were grounded on the general proposition that at the time the loss occurred, appellee was engaged in hauling said lawnmowers in interstate commerce and appellee had not secured any permit or certificate of convenience and necessity from the I. C. C. to haul said lawnmowers, as required by the laws of the United States; and that said hauling was illegal and in violation of the laws of the United States; and that said acts constituted a criminal offense in violation of the laws of the United States; and that such acts were contrary to the public policy of the United States. It was also alleged that the alleged contract which appellee had to haul said lawnmowers was illegal and unenforceable and null and void. This is the substance of plea 25.

"The trial court took the view that regardless of all of these allegations, and regardless of the fact that appellee was operating in violation of the law, that this did not invalidate the insurance."

■ ■ The decisions of this Court have, through a long line of cases, given consideration to a principle analogous to that here involved. It is thus expressed, with the authorities cited, in Knight v. Watson, 221 Ala. 69, 127 So. 841, 842:

"A statute imposing a license tax as a revenue measure merely, although declaring the doing of business without such license unlawful and affixing a penalty as a method of enforcement, does not render void and unenforceable contracts made without such license. Sunflower Lumber Co. v. Turner Supply Co., 158 Ala. 191, 48 So. 510, 132 Am.St.Rep. 20; Morgan v. Whatley & Whatley, 205 Ala. 170, 87 So. 846; Smith v. Sharpe, 162 Ala. 433, 50 So. 381, 136 Am. St.Rep. 52.

"But an act under the police power, designed to regulate the business, to protect the public against fraud and imposition, requiring a license as evidence of qualification and fitness, and prohibiting any act of business under penalty, unless such license is first obtained, does render such contracts illegal, void, and unenforceable in actions for the recovery of compensation and the like. Bowdoin v. Alabama Chemical Co., 201 Ala. 582, 79 So. 4; Sunflower Lumber Co. v. Turner Supply Co., supra; Woods v. Armstrong, 54 Ala. 150, 25 Am. Rep. 671." See, also, Ellis v. Batson, 177 Ala. 313, 58 So. 193; Gill Printing Co. v. Goodman, 224 Ala. 97, 139 So. 250; Marx v. Lining, 231 Ala. 445, 165 So. 207.

An exhaustive annotation on the subject, specifically with reference to insurance contracts, is given in 132 A.L.R. 125, with the supporting case of Northwestern Amusement Co. v. Aetna Casualty and Surety Co., 165 Or. 284, 107 P.2d 110, 132 A.L.R. 118. See, also, 29 Am.Jur. 208 et seq.; 44 Corpus Juris Secundum, Insurance, p. 1007, § 242; Rainer v. Western Union Tel. Co., Mo.App., 91 S.W.2d 202; Roddy v. Hill Packing Co., 156 Kan. 706, 137 P.2d 215.

■ ■ A distinction which runs through some of the insurance cases is that "If insurance on property does not encourage or promote an unlawful use or business it is not void, although it may be collaterally connected therewith; but, if it directly protects or encourages the unlawful act or business, the policy will be invalid." 44 Corpus Juris Secundum, Insurance, § 242, p. 1007; 132 A.L.R. 125. Again, it is said

that if the effect of the insurance "is to promote the illegal use, the contract is void as against public policy; but, if the contract does not promote the illegal use, it is not void though it may have a collateral connection with the illegal use." Demary v. Royal Indemnity Co., La.App., 182 So. 389.

 Another statement by this Court is "that contracts. specially prohibited by law, or the enforcement of which violated a law, or the making of which violated the law which was enacted for regulation and protection, as distinguished from a law created solely for revenue purposes, is void and nonenforceable * * * (and) Whenever a party requires the aid of an illegal transaction to support his case, he cannot recover." Ellis v. Batson, supra, 177 Ala. at page 317, 58 So. at page 194; Pope v. Glenn Falls Ins. Co., 136 Ala. 670, 34 So. 29. See, also, 9 A.L.R.2d 184.

 Plaintiff's contract of insurance was not prohibited by law. While the Motor Transportation Act is for regulation and protection, the insurance here involved did not violate that Act. But we think plaintiff could not establish his case without reference to or in reliance upon an illegal act or transaction within the principle declared above. This is for the following reason: his only insurable interest is dependent upon an illegal transaction made so by an act, which was enacted for regulation and protection and not for revenue. His contract to transport the lawnmowers, and the transportation of them as a contract carrier in interstate commerce, was illegal and subjected him to a penalty by virtue of such an act of Congress, 49 U.S.C.A. §§ 309 and· 322, which was a regulation for the protection of the public. He cannot recover against the consignor or consignee for the charges for doing so. Knight v. Watson, supra; Town of Cottonwood v. H. M. Austin & Co., 158 Ala. 117, 48 So. 345; Bluthenthal v. Headland, 132 Ala. 249, 31 So. 87; Booker T. Washington Burial Ins. Co. v. Roberts, 228 Ala. 206, 153 So. 409; General Electric Co. v. Town of Fort Deposit, 174 Ala. 179, 56 So. 802.

The case of Ocean Ins. Co. v. Polleys, 13 Pet. 157, 10 L.Ed. 105, is distinguishable.

It may be quite true that the insurance was only ·remotely connected with the illegality of the trip and the insurance was in no respect to aid, assist or advance any such illegal purpose. But we observe that the assured was there the owner of the vessel and had an insurable interest not dependent upon an illegal transaction for its existence, and his possession and ·ownership were not contrary to law. If its possession was contrary to law it is said not to be the subject of valid insurance. 132 A.L.R. 125.

The possession of the truck in the instant case was not contrary to law, and insurance upon it in favor of plaintiff would be different from insurance by him on the lawnmowers of another carried by him on a trip which was illegal because the contract of carriage was illegal and, therefore, confers ·on the truck owner no interest in the lawnmowers enforceable at his instance, being a party to an illegal transaction from which alone his insurable interest is derived and necessary to be shown to support his claim on the insurance contract.

There is apparent authority for an opposite view, which is thus explained editorially in 9 A.L.R.2d 185. The courts are primarily restricted by the outcome of the inquiry into whether the insured is so situated with reference to the property that he would be liable to loss should it be damaged or destroyed by the peril against which it is insured.

But that theory will not fit our cases. Our cases hold steadfastly to the view that if plaintiff to· support his case must predicate his right on a contract which violates a law which was enacted as a police regulation to protect the public against fraud, imposition or unfitness, especially with a penalty for its violation, and which is not primarily a revenue measure, cannot stand in our courts. Knight v. Watson, supra, and other cases cited there and supra. In view of those pronouncements, the editorial comment supra, cannot be adopted as our guide.

The broad statement in Pope v. Glenn Falls Ins. Co., supra, and Ellis v. Batson, supra, must be construed in connection with the principle so fully established by our

cases. It is not alone the illegality of the transaction which is controlling, but the nature of such illegality. It is not necessary to approve the statement in Pope v. Glenn Falls Ins. Co., as properly applied in that case. It was there stated only to further support an argument which was well supported without it. A contract void by noncompliance with the statute of frauds is valid as respects persons not connected with it, when the parties themselves have not repudiated it. Bradley v. Hall, 239 Ala. 544, 195 So. 883.

But the pleas here set-up that sort of contract which puts plaintiff beyond the help of the courts. It confers on him no right upon which to base his claim of an insurable interest.

We do not think that any good purpose could be accomplished by wading through the one hundred and eighty-seven assignments of error to see if correct principles have been properly applied in them. The judgment must be reversed for sustaining the demurrer to pleas 8, 21 and 25. We assume that will be sufficient for another trial.

Reversed and remanded.

BROWN, LIVINGSTON, and LAWSON, JJ., concur.

### On Rehearing.

FOSTER, Justice.

Our attention is called to the fact that there is an exclusion from the requirements of 49 U.S.C.A. § 309, and the penalties of section 322, so that they do not apply to casual, occasional or reciprocal transportation of property by motor vehicles in interstate commerce. This is a part of the Motor Carrier Act. 49 U.S.C.A. § 303(b) (9). Whereas section 309, to which we referred supra, applies to persons engaged in the *business of a contract carrier*. It would appear therefore that section 303(b) (9) provides an exception to section 309. It is rather an exclusion than an exception. Section 309 only applies to one engaged in the business of a contract carrier. Section 303(b) (9) provides an exclusion from the operation of that chapter of casual, occa-

sional or reciprocal carriers by motor vehicles, not so engaged as a regular occupation or business. So that the latter is not, precisely speaking, an exception from section 309, because it rather describes an operation not covered by section 309. But it is referred to as an exception in State of California v. Thompson, 313 U.S. 109, 61 S.Ct. 930, 85 L.Ed. 1219.

We go to pleas 8, 21 and 25 to see if they are sufficient measured by a principle of pleading that, "If there is an exception in the enacting clause, the party pleading must show that his adversary is not within the exception; but, if there is an exception in a subsequent clause or subsequent statute, that is matter of defense, and is to be shown by the other party." McBride v. Baggett Transp. Co., 250 Ala. 488, 35 So.2d 101, 103; Clinton Mining Co. v. Bradford, 192 Ala. 576, 69 So. 4. This principle also applies to pleading exceptions from the operation of a contract. Life & Casualty Ins. Co. v. Garrett, 250 Ala. 521, 35 So.2d 109.

If section 303(b) (9) is an exception to section 309, it should be pleaded by plaintiff by replication if the pleas are free from the demurrer interposed to them.

Plea 8 alleges that plaintiff was "engaged in the operation as a carrier in interstate commerce."

Plea 21 alleges that "plaintiff was engaged in hauling said lawnmowers in interstate commerce as a contract carrier."

Plea 25 alleges that "plaintiff was engaged in hauling or carrying said lawnmowers in interstate commerce."

If those pleas do not sufficiently allege that in carrying the lawnmowers plaintiff was engaged *in the business* of hauling as a contract carrier, the theory was not made the basis of a ground of demurrer so far as we can find, and no such ground was pointed out in brief on original submission. In fact the contention was made for the first time by supplemental brief on this application for rehearing. To engage *in business* has been defined by this Court as "that which occupies the time, attention, and labor of men, for the purpose of a livelihood or profit." One act may

368

be sufficient if the circumstances show a purpose to continue the business. Abel v. State, 90 Ala. 631, 8 So. 760. That definition we think is not local in its application. The language of the plea, *supra*, may not strictly speaking be a positive allegation that defendant was at the time engaged *in the business* of a contract carrier in interstate commerce. But they allege that he was engaged in hauling in interstate commerce, without a permit and that it was illegal and in violation of the laws of the United States. If plaintiff contends that they do not exactly allege as they should that he was then engaged in such business, the contention should be properly pointed out in the demurrer so as to allow an amendment if necessary.

■ We are also requested to review our former holding that the Motor Carriers Act of Congress, 49 U.S.C.A. §§ 301 to 327, is not within the principle to which we applied it, whereby one who has violated it may not maintain a suit when his right is dependent upon the contract which is thus violative of an act which is not one for revenue but for regulation in the public interest. It is said in State of California v. Thompson, supra, that a statute of California relating to motor carriers is not a revenue measure, but that "It is not shown to be other than what on its face it appears to be, a measure to safeguard the members of the public desiring to secure transportation by motor vehicle, who are peculiarly unable to protect themselves from fraud and overreaching of those engaged in a business notoriously subject to those abuses. [313 U.S. 109, 61 S.Ct. 932.]" The Federal Motor Carrier Act does not contain a clause making void a contract of transportation without a compliance by one engaged in that business. But section 322, supra, makes it a crime to do so knowingly and willfully, and authorizes an injunction. We think it is subject to the comment made in State of California v. Thompson, supra, that it was enacted to safeguard the public desiring to use that form of transportation peculiarly unable to protect themselves from fraud and overreaching.

■ It is said in many cases that the contract must have been against public policy to deny its enforcement by one who has performed it against the other interposing that defense. The theory is that no one can lawfully do that which tends to injure the public or is detrimental to the public. This principle has been the dominant factor in such cases both in this Court and that of the United States Supreme Court. Knight v. Watson, 221 Ala. 69, 127 So. 841; Lowery v. Zorn, 243 Ala. 285, 9 So.2d 872; Steele v. Drummond, 275 U.S. 199, 48 S.Ct. 53, 72 L.Ed. 238; Twin City Pipe Line Co. v. Harding Glass Co., 283 U.S. 353, 51 S.Ct. 476, 75 L.Ed. 1112; A. C. Frost & Co. v. Coeur D'Alene Mines Corp., 312 U.S. 38, 61 S.Ct. 414, 85 L.Ed. 500; Bement & Sons v. National Harrow Co., 186 U.S. 70, 22 S.Ct. 747, 46 L.Ed. 1058.

In the case of A. C. Frost & Co. v. Coeur D'Alene Mines Corp., supra, the suit was by the holder of a contract for the purchase of stock from a corporation. The corporation before making the contract of sale had not complied with the Securities Act of the United States, 15 U.S.C.A. § 77a et seq. The petitioners so-called, or plaintiffs, charged that the respondent corporation had repudiated the contract and asked judgment for damages for its breach. The corporation defended upon the ground that the contract was entered into in violation of the Securities Act of Congress and was void and, therefore, the defendant was not liable in damages for its breach. The court observed that the legislative purpose was protection of innocent purchasers of securities, observing that "They (innocent purchasers) are given definite remedies inconsistent with the idea that every contract having relation to sales of unregistered shares is absolutely void". [312 U.S. 38, 61 S.Ct. 417.] The court gave further expression to the views above expressed by us with respect to the enforcibility of contracts which are made in violation of law and public policy, citing the above cases, and observing: "No one can lawfully do that which tends to injure the public or is detrimental to the public good. If it definitely appears that enforcement of a con-

tract will not be followed by injurious results, generally, at least, what the party has agreed to ought not to be struck down. * * * the end which Congress intended to accomplish was treated as the controlling factor." The effect of the opinion is to justify a suit by an innocent purchaser of securities against a corporation making a contract for the sale of such securities to the purchaser at a time when the corporation had not complied with the Securities Act of Congress, and when the contract is subject to the penalties of such Act. That conclusion is based upon the fact that plaintiff in that case was within the protection of the legislative purpose sought to be accomplished and as the controlling factor in the Act of Congress. Therefore, to deny him relief on such a contract, it was said, wou'd defeat the purpose sought to be accomp'ished by it. It was in no sense a suit by the corporation which violated the Act in an effort to enforce the terms of the Act and whose rights are dependent upon a contract prohibited by the Act. Whereas such is the nature of the instant suit.

In the case of Twin City Pipe Line Co. v. Harding Glass Co., supra, the plaintiff was a pipe line company which had entered into an agreement with the defendant which was a consumer of gas. The contract provided that the glass company, as consumer, would take all its requirements of gas so long as the pipe line company could adequately supply them, and to pay the rate prescribed by public authority, and in the event of a shortage of gas the pipe line company might discontinue serving the glass company upon condition that the same character of service be given to it that was given to other industries. The plaintiff in the suit sought to enjoin the glass company from taking gas from another pipe line company in violation of that contract. The glass company in defense of that suit contended that the contract violated the public policy of Arkansas, which prohibited perpetuities and monopolies. With reference to such a contract the court asserted the general principles to which we have referred above. It referred to the meaning of public policy in that connection, saying there is no fixed rule by which to determine what contracts are repugnant to it and that contracts should be stricken down upon the basis of that principle with caution and only in cases plainly within the reason on which the doctrine rests, and that it is only because of the dominant public interest that one who has had the benefit of the performance by the other party will be permitted to avoid his own promise. In conclusion the court held: "The contract does not subject the glass company to, or tend in any manner to impose upon the public, any wrong, disadvantage, or evil attributable to monopoly or restraint of trade.

"The glass company has failed to show that the contract has any tendency to injure the public, and no reason appears why it should not be enforced accord'ng to its te.ms." [283 U.S. 353, 51 S.Ct. 478.]

It is our view that when a transportation company engages in the business of interestate commerce as a contract carrier without comp'ying with the requirements of the Motor Carrier Act, as to which there are criminal sanctions provided in the Act, such carrier has put himself in a position which contravenes the policy of that Act which was provided, as said in the case of State of California v. Thompson, supra, to enable shippers to "protect themselves from fraud and overreaching of those engaged in a business notoriously subject to those abuses." It is our view that the Federal Motor Carrier Act was distinctly for that purpose.

We think one primary purpose is to protect the public against irresponsible carriers who do not have adequate facilities, financial backing and personal integrity to render to the public adequate service. It is not a question of whether the particular carrier did have adequate facilities, financial backing and personal integrity sufficient to protect the shipper on that particular occasion, or shippers generally; but it is a question of his complying with the law which is applicable to him and for the protection of the public. We know of no case or authority which would permit such a carrier, in violation of law, to found a claim upon the basis of such a contract.

370

In our case of White v. Henry, 49 So.2d 779,[1] cited by appellee on rehearing, the suit was not by the carrier violating the law but by the shipper not doing so. The rule does not apply to him when it is not shown that he intentionally participated in the violation of the law.

In this case plaintiff had not completed his part of the contract. But he is predicating an insurable interest in property not his own on the theory that he has the interest of a bailee, to support an insurance contract which will protect him in the collection of charges whose basis is solely by virtue of an illegal contract which he has not performed. True, he can collect also, if he can recover his personal claim, the value of the property lost for the benefit of his shipper and owner of the property.

We believe it would be contrary to dominant public policy for one to engage in the business of a contract carrier in interstate commerce without a permit required by law and enforce a transportation insurance contract to protect his rights against accidents, although he thereby may sustain no liability, and his only interest to be protected is that which arose by virtue of such contract. Until we learn better that will be our opinion in that respect.

The application for rehearing is overruled.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.