67 So.2d 46

## STATE v. LEETH.

### 8 Div. 45.

Court of Appeals of Alabama.

Aug. 5, 1952.

Rehearing Denied Aug. 12, 1953.

J. W. Brown, Boaz, for appellee.

Si Garrett, Atty. Gen., and H. Grady Tiller and Wm. H. Burton, Jr., Asst. Attys. Gen., for appellant.

HARWOOD, Judge.

This action originated as a suit in assumpsit which was brought by the appellant (the plaintiff in the court below), against the appellee, S. H. Leeth (the defendant in the court below), in the Circuit Court of Marshall County, Alabama, Albertville Division, to recover from Mr. Leeth State and County licenses, penalties for delinquency, interest, citation and issuance fees for his engaging in the business of lending money on mortgages secured by real estate in this State as is pro-

vided for under Title 51, Section 495(3), Code of Alabama 1940, and for the four fiscal years October 1, 1946 through September 30, 1947, October 1, 1947 through September 30, 1948, October 1, 1948 through September 30, 1949, and October 1, 1949 through September 30, 1950. The court overruled the appellee's demurrers and the appellee, at the time of the trial, pleaded in short by consent, the general issue. The case was tried by the court without a jury, and thereafter the court entered a judgment for the appellee. It is from that judgment of the court below that the appellant has taken this appeal.

There is no conflict in the evidence submitted in the court below. It tends to show that during the fiscal year 1946–47 Mr. Leeth made 73 loans totalling $95,007; 100 loans in the fiscal year 1947–48, totalling $127,200.90; 46 loans during the fiscal year 1948–49, totalling $59,520.49; and 51 loans during the fiscal year 1949–50, totalling $55,562.65.

Of these 270 loans made during this four year period seventeen of such loans involved a sale of real estate by Mr. Leeth to the borrower. The remaining loans were straight real estate mortgage loans.

All of the loans were made from Mr. Leeth's personal monies.

The evidence further tends to show that Mr. Leeth is 80 years of age, and a bona fide resident of this State. He at one time conducted a mercantile store. A few years ago he sold out this business, but reserved a right to keep a desk and a chair in the store. Mr. Leeth uses this desk casually, and occasionally resorts there to carry on some of his business. He spends a good part of his time on the streets of Boaz.

Mr. Leeth carries on some farming operations, and also owns some rental property to which he attends. He apparently is a man of some means.

Since disposing of his mercantile business Mr. Leeth looks upon himself as "retired."

None of the persons to whom Mr. Leeth made loans were solicited for such loans by Mr. Leeth, but on the other hand the borrowers were the active initiators of the loans. Some of these borrowers first contacted Mr. Leeth at his desk in the store in reference to the loans, others contacted him on the street, and some went to his home.

It was the theory of the defense in the court below, and apparently also that of the lower court, that the appellee was not liable for any real estate mortgage loan license because he came within the exemption contained in Section 495(3), supra, which exemption is as follows:

"No individual person who is a bona fide resident of this state and no guardian, trustee, executor, administrator or other person in a representative capacity not professionally engaged in the business of loaning money, who shall lend his money or that of his ward, beneficiary, cestui que trust or principal secured by mortgage on real property, shall be liable for any license under this section."

Since the evidence unquestionably shows that Mr. Leeth was a bona fide resident of this State, and was lending his own money, the sole question involved in this appeal was whether he was "professionally engaged in the business of loaning money."

Counsel for the appellant (the State of Alabama), argue that the term "professionally engaged in the business of loaning money" is synonymous with and means nothing more than "engaged in," or "carrying on" the business of loaning money, and that the Supreme Court, in Bankers & Shippers Ins. Co. of New York v. Blackwell, 255 Ala. 360, 51 So.2d 498, at page 504, has stated that:

"To engage in business has been defined by this Court as 'that which occupies the time, attention, and labor of men, for the purpose of a livelihood or profit.' One act may be sufficient if the circumstances show a purpose to continue the business."

A definition given under one set of issues and facts often cannot be serviceably used in determining dissimilar issues and facts.

The ultimate concept must arise from the facts of a particular case.

Followed to its logical conclusion, if accord be given to the State's argument, the exemption granted to bona fide residents, lending their own money, would be, to all practical purposes, nullified.

■ We think it clearly the intent of the legislature to exempt from license fees: 1. bona fide residents; 2. loaning their own money. These standards are clear and explicit.

The attempted proviso to the exception that such exemption is not allowable to those "professionally engaged" in the business of lending money presents a third measuring device which is indeed a difficult and rather uncertain standard.

■ Counsel for the State argue that the large number of loans, and the amounts loaned by the appellee are of themselves evidence of the fact that appellant was "professionally engaged in the business of making loans." We do not think such test of any value in determining the particular question now before us, for it is our view that the number of loans, or their amounts are not facts, that can, under the terms of the statute, as it is written, shed any real light in determining the lender's status. See Higgins v. Commissioner of Internal Revenue, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783. The uncertainty of such a test is evident from any attempt to apply it. A bona fide resident owning $100,000 concededly would not be considered to be "professionally engaged in the business of loaning money" if he made one loan of the entire amount, nor if he made two $50,000 loans. One hundred $1,000 loans are equally within the terms of the statute, which in nowise limits the number or amounts of the loans by a bona fide resident of his own money, secured by mortgages on real estate.

When the legislature employed the term "professionally" engaged in the business of loaning money, it was the intent of that body undoubtedly to require more activity on the part of a lender than merely the act of lending money. The term was necessarily used in a broad sense, for lending money is a business and not a profession. For instance, the term "professional" is commonly used to distinguish those highly proficient in many endeavors from mere amateurs. Such designation conveys an idea, though not very enlightening to our question, since we think we can say with assurance that we lack judicial knowledge of the existence of amateurs in the field of lending money.

■ Be that as it may, it is our conclusion that to be classed as a "professional" lender of money under the statute now under consideration some of the following criteria should be shown; that such person maintained a regular place of business for the purpose of lending money; that he maintained regular office hours for that purpose; that he was commonly and generally known to be engaged in that business; that he actively pursued such business by solicitation or advertising. We do not wish to be understood as saying that all of the above criteria must be present, or that additional ones might not be enlightening, but only that the above criteria would be useful in determining the true status of a "professional" money lender.

■ It is our view that the evidence presented by the State failed to establish Mr. Leeth as professionally engaged in the business of loaning money, and that therefore the lower court properly entered a judgment in his favor.

Affirmed.