CARROLL, Judge.
Charles Friedman and his wife made a mortgage encumbering certain real and personal property, securing certain promissory notes and in addition, as set out in covenant 22 typewritten into the mortgage, securing payment to the mortgagee of obligations resulting from its sales of equipment and coffee, etc., to any other restaurant business in which Friedman should engage thereafter.[1]
Appellant, who holds the mortgage as as-signee of the original mortgagee, sued to foreclose (1) for a defaulted balance on the notes in the amount of $650, (2) for $215 with interest from September 25, 1959, representing the cost of merchandise (“equipment, coffee, tea and spices”) sold to the business referred to in covenant 22, Market View Restaurant, Miami, Florida,[2] and (3) the sum of $3,204.37 with interest from June 30, 1959, for similar merchandise sold and delivered by appellant to Pickled Herring Charlie’s, a restaurant business in Hialeah owned and operated by Pickled Herring Charlie’s, Inc., a Florida corporation.
With reference to the last mentioned item, the complaint alleged that at the time the mortgage was made Friedman was preparing a new restaurant in Plialeah, and so informed the mortgagee; that some four months later the new restaurant was opened under the name of Pickled Herring Charlie’s; that appellant, in reliance on the mortgage security, provided equipment and supplies to that restaurant business on open account until June 30, 1959, at which time the unpaid balance stood at $3,204.37. The defendants Friedman and wife answered admitting they owed the first two smaller items declared upon but denying the claim for the $3,204.37, and they averred in defense that the credit was not extended to Friedman but to the corporation, Pickled Herring Charlie’s, Inc., and that the amount had been charged by appellant to the corporation.
By an amended decree the chancellor held that the mortgage did not secure this disputed obligation. Plis holding was based on the ground that covenant 22 of the mortgage did not apply because the restaurant was “operated by a corporation.[3]”
We conclude that the learned chancellor placed too narrow a construction on the mortgage provision in question, and that it was error to exclude the obligation of the Hialeah restaurant business from the lien of the mortgage. As applied to the circumstances of this case, it seems clear that the meaning and intent of covenant 22 was *149 that the mortgage should secure obligations for sales to other restaurant businesses in which the Friedmans or either of them should engage. Thus we view the determinative question to be whether the defendant Charles Friedman was “engaged” in the new restaurant business in Hialeah.
Appellant in its brief has included definitions of the word “engaged,” which imply the meaning we give it here. Appellant cites Roberts v. State, 26 Fla. 360, 7 So. 861, where the Florida Supreme Court, using Webster’s definition, said: “ ‘To engage in,’ means ‘to embark; to take a part; to employ one’s self; to devote attention and effort; lo enlist.’ Webst.Dict.” Appellant also presented the definition from Black’s Law Dictionary, reading: “Engage: to employ or involve one’s self; to take part in; to embark on.” The Supreme Court of Alabama has defined the phrase “engage in business” as “that which occupies the time, attention, and labor of men, for the purpose of a livelihood or profit.” Bankers & Shippers Ins. Co. of New York v. Blackwell, 255 Ala. 360, 51 So.2d 498, 504. Consistent with the above definitions, a person was held to have “engaged” in the stove manufacturing business in violation of his covenant not to do so, made on sale of his business, where a corporation of which he became an employee was engaged in such business. Pittsburg Stove & Range Co. v. Pennsylvania Stove Co., 208 Pa. 37, 57 A. 77.
The new Hialeah restaurant, in prospect at the time the mortgage was made, had not yet been named. The name later given to it, Pickled Herring Charlie’s, identified it with Charles Friedman, who had been referred to in the press by that name as a restaurateur. That Friedman was a substantial owner in the new business and active in its operation was clearly shown on the record. His denial in his testimony that he took part in the business is against the manifest weight of evidence to the contrary. His testimony that he did not know or recall what interest he had, if any, must yield to the testimony given by his associate in the corporation- — his accountant, the secretary of the corporation — who testified that at the outset Friedman held 40% of the stock, his backer or partner 40% and the secretary 20%, and that some time later Friedman’s stock interest was increased at his insistence to 50%. It was shown that Friedman was the president of the corporation and was present and took part in the operation. The restaurant corporation’s disbursements made by checks were signed by him and the secretary, and later the checks were signed by Friedman alone.
The appellee argued that it would be necessary to rewrite the contract in order to hold that the covenant was applicable to credit extended by appellant to the new Hialeah restaurant business. Such is not the case. The covenant expressly provided security for obligations of “any other restaurant business” (in which Friedman should engage). When the mortgage was made Friedman was engaged in only the one named restaurant business. Therefore, the covenant necessarily contemplated other restaurant businesses. A further argument of the appellee was that the covenant could not be construed as a guaranty of the obligation of any third party or business, but only as applying to credit extended to Charles Friedman. The chancellor accepted that contention, and in so doing committed error.
The covenant did not limit the mortgage vto credit extended the Friedmans or to other x -'scaurant businesses owned only by them. Had it been intended to so limit the security tc extension of credit to those individuals alone, it would have been reasonable for the mortgage covenant to so state. On the contrary, it made reference to obligations running to the appellant from sales to “any other business in which the mortgagors, or either of them” should thereafter “engage.” Thu;> by express wording reference is made to securing obligations of restaurant businesses in which Friedman “engages,” rather than to obligations of Friedman. Patently Friedman was “engaged” in the new restaurant business in Hialeah within the *150 language and the purposes of covenant 22 of the mortgage.
The decree is reversed and the cause is remanded to the circuit court with directions to enter an amended decree of foreclosure including therein the said amount of $3,-204.37 with interest thereon from June 30, 1959, as secured by the said mortgage.
Reversed and remanded.

. “This mortgage secures an obligation of Five Thousand ($5,000.00) Dollars, and in addition thereto shall stand as security for any obligations now existing or hereafter incurred, by reason of the purchase of equipment, coffee, tea or spices from Holloway Coffee Company, Miami, Florida, by the restaurant located at 2195 North West 12th Avenue, Miami, Florida, or any other restaurant business in which the mortgagors, or either of them, may hereafter engage.”

. This $215 item was paid to the plaintiff after the suit was filed.

. The portion of the decree dealing -with this matter was as follows:
“7. Plaintiff further claims the sum of $3,204.37 for equipment, coffee, tea and spices sold and delivered to the restaurant business known as Pickled Pierring Charleys, located at Hialeah, Florida, pursuant to the provisions of paragraph 22 of said mortgage which reads as follows:
‘This mortgage secures an obligation of Five Thousand ($5,000.00) Dollars, and in addition thereto shall stand as security for any obligations now existing or hereafter incurred, by reason of th© purchase of equipment, coffee, tea or spices from Holloway Coffee Company, Miami, Florida, by the restaurant located at 2195 North West 12th Avenue, Miami, Florida, or any other restaurant business in which the mortgagors, or either of them, may hereafter engage.’ '
The Court finds that said restaurant business was operated by a corporation known as Pickled Herring Charlie’s, Inc. The provisions of paragraph 22 of said mortgage therefore do not create a lien upon the property described in said mortgage, as security for the obligation to plaintiff of the corporation Pickled Herring Charlie’s, Inc. Said portion of the claim is therefore denied.”